# NOBLE *v.* UNION RIVER LOGGING RAILROAD COMPANY.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 1157. Argued December 20, 1892. — Decided January 9, 1893.

A decision of the Secretary of the Interior, in exercise of the powers conferred upon him by the act of March 3, 1875, c. 152, 18 Stat. 482, that a designated railroad company is entitled to a right of way over public land, cannot be revoked by his successor in office.

Whether a railroad company applying for such a grant is a company which the statute authorizes to receive a grant of a right of way is a quasi judicial question, which, when once determined by the Secretary, is finally determined so far as the executive is concerned.

THIS was a bill in equity by the Union River Logging Railroad Company to enjoin the Secretary of the Interior and the Commissioner of the General Land Office from executing a certain order revoking the approval of the plaintiff's maps for a right of way over the public lands, and also from molesting plaintiff in the enjoyment of such right of way secured to it under an act of Congress.

The bill averred in substance that the Union River Logging Railroad Company was organized March 20, 1883, under chapter 185 of the Territorial Code of Washington authorizing the formation of "corporations for . . . the purpose of building, equipping and running railroads," etc. The articles declared the business and objects of the corporation to be "the building, equipping, running, maintaining and operating of a railroad for the transportation of 'saw-logs, piles and other timber, and wood and lumber, and to charge and receive compensation and tolls therefor . . . from tide water in Lynch's Cove, at the head of Hood's Canal, in said Mason County, and running thence in a general northeasterly direction, by the most practicable route, a distance of about ten miles, more or less," etc. The capital stock of the company being subscribed, the company proceeded by degrees to con-

struct and equip a road extending from tide water in Lynch's Cove, about four miles along the line above mentioned, to transport saw-logs and other lumber and timber. On August 17, 1888, amended articles of incorporation were filed, "to construct and equip a railroad and telegraph line" over a much longer route, with branches, and "to maintain and operate said railroad and branches, and carry freight and passengers thereon and receive tolls therefor." Also "to engage and carry on a general logging business and provide for the cutting, hauling, transportation, buying, owning, acquiring and selling of all kinds of logs, piles, poles, lumber and timber."

In the spring of 1889, plaintiff proceeded to extend its line of road for three miles beyond the point to which it had previously extended it. It located at intervals a better line of road; made and ballasted a new roadbed of standard gauge; and substituted steel rails and another locomotive in place of those rails and equipments which had been sufficient for its limited purposes, as specified in the original articles. In January, 1889, the company, desiring to avail itself of an act of Congress of March 3, 1875, (18 Stat. 482,) granting to railroads a right of way through the public lands of the United States, filed with the register of the land office at Seattle a copy of its articles of incorporation, a copy of the territorial law under which the company was organized, and the other documents required by the act, together with a map showing the termini of the road, its length, and its route through the public lands according to the public surveys. These papers were transmitted to the Commissioner of the Land Office, and by him to the Secretary of the Interior, by whom they were approved in writing, and ordered to be filed. They were accordingly filed at once and the plaintiff notified thereof.

On June 13, 1890, a copy of an order by the appellant, successor in office to the Secretary of Interior by whom the maps were approved, was served upon the plaintiff, requiring it to show cause why said approval should not be revoked and annulled.

This was followed by an order of the acting Secretary of

the Interior, annulling and cancelling such maps, and direct-ing the Commissioner of the Land Office to carry out the order.

The answer admitted all the allegations of fact in the bill, and averred that it became known to the defendants that the plaintiff was not engaged in the business of a common carrier of passengers and freight at the time of its application, but in the transportation of logs for the private use and benefit of the several persons composing the said company, and that, being advised that a railroad company carrying on a merely private business was not such a railroad company as was con-templated by the act of Congress, deemed it their duty to vacate and annul the action of Mr. Vilas, then Secretary of the Interior, approving plaintiff's maps of definite location, and to that end caused the notice complained of in the bill to be served. They further claimed it to be their duty to revoke and annul the action of the former Secretary of the Interior as having been made improvidently and on false suggestions, and without authority under the statute.

Upon a hearing upon the bill, answer and accompanying exhibits, the court ordered a decree for the plaintiff, and an injunction as prayed for in the bill. Defendants appealed to this court.

*Mr. Assistant Attorney General Maury* for appellants.

From the pleadings it is to be taken as true that complain-ant was not at the time of its application to be allowed to enjoy the privileges extended by the act of March 3, 1875, engaged in the business of a common carrier of passengers and freight, but was engaged at that time in the transportation of logs for the private-use and benefit of the persons compos-ing said complainant company, and that the action of the Secretary of the Interior on complainant's application was induced by complainant's false suggestions.

The bill does not contain a single allegation that complain-ant was exercising the public duty of a common carrier of passengers and freight at the time the order of January 29,

1889, was entered by the Secretary of the Interior. Nor is it denied that the railroad companies contemplated by the act of March 3, 1875, are such as exercise the public office of carriers for the general public. The foundation on which the whole case of complainant rests is the contention that the right of complainant to enjoy the privileges of the act of March 3, 1875, is *res judicata* by the said order of January 29, 1889, and that this order cannot be assailed collaterally by the defendants, and can only be impeached by a direct proceeding instituted for that purpose in the name of the United States.

. It results, therefore, that the bill presents the bald case, that, although it has come to the knowledge of Secretary Noble that complainant was not exercising the office of a common carrier at the time the order of January 29, 1889, was entered, and so was not entitled to the benefits of the act of March 3, 1875, the Secretary cannot remove from the maps of the Land Department the line of definite location which was put there by means of complainant's false suggestions. Why, then, it may be asked, should the government be driven to the circuitous proceeding of a suit in chancery in order to get rid of this intruder on its domain? This question seems to be answered satisfactorily by the Attorney General in an opinion on this case, 19 Opin. Attorneys Gen'l, 551, 552, where he says: "It follows, then, that the application to the Department was for a purpose not authorized by law, and that the action taken in granting the application was void, it being perfectly clear that no disposition can be made of any part of the public domain without the authority of Congress. . . . To hold that the Department cannot in this case cancel its approval and erase the line of the railroad from the public plats, but that the United States must go into a court of equity for that purpose, would seem to urge the conclusiveness of executive action to an unreasonable extent. The principle of *res judicata*, while to some extent applicable to the action of executive officers, has never been held to prevent an officer from reopening a matter in which he acted on a mistake of fact, or where new and additional evidence, which would justify a

new trial or a rehearing, has been adduced. . . . In the case before me it is entirely practicable for the Department to remove the line of railroad, from the public plats, both here and in the local land office, and thus, effectually, cancel the approval improvidently given. It is not necessary, in order to undo what has been done, to compel the company to surrender any paper for cancellation, because it is the public plats alone that need to be changed, and these are under the entire control of the Department of the Interior. . . . It would seem to be a useless circuity to have recourse to judicial proceedings to correct executive action in a case like the one in hand, where there is a concurrence of mistake of fact and want of power in the Department, and where the void proceeding is an obstacle in the way of the Land Office."

I do not deny that the acts of the Land Department, when within its powers, may be controlling; and, when not controlling, may be protected against collateral attack. Yet there are vital conditions to the jurisdiction of that Department, the absence of which may always be shown collaterally. *Smelting Company* v. *Kemp*, 104 U. S. 636; *Wilcox* v. *Jackson*, 13 Pet. 498; *Seymour* v. *Osborne*, 11 Wall. 516.

Where the law creates a tribunal of special, stinted jurisdiction, dependent on the existence of a certain fact or certain facts, and is silent as to whether the decision of the tribunal shall be conclusive as to the existence of such fact or facts, it must be determined, from the whole law, what was the legislative intent in this particular.

Why should the Secretary of the Interior, with his limited power under the act, be held to be able to make jurisdiction for himself by his own finding, when he possesses no such power in administering other land laws? Is it not more agreeable to reason to hold that Congress, in making this law, must have had in view the restrictive interpretation which this court had placed on previous laws investing the Secretary of the Interior with judicial authority over the public lands, and must have intended to adopt that interpretation?

There is a class of courts whose jurisdiction turns on the existence of some fact or facts, and whose judgments may be

assailed collaterally by proving that in a given case, such fact or facts did not exist, whether the court expressly found the contrary or not, and it is not perceived that there is any good reason why the Secretary of the Interior should not likewise be forbidden to give himself jurisdiction by his own findings of fact. See *Griffith* v. *Frazier*, 8 Cranch, 9; *Kane* v. *Paul*, 14 Pet. 33; *Rose* v. *Himely*, 4 Cranch, 241; *Thompson* v. *Whitman*, 18 Wall. 457; *Bowman* v. *Russ*, 6 Cowen, 234; *Terry* v. *Huntington*, Hardres, 480; *Wise* v. *Withers*, 3 Cranch, 331; *Mills* v. *Martin*, 19 Johns. 7; *Rathbun* v. *Martin*, 20 Johns. 343; *Sears* v. *Terry*, 26 Connecticut, 273; *Britain* v. *Kinnaird*, 1 Brod. & Bing. 432; *Wanzer* v. *Howland*, 10 Wisconsin, 8; *Broadhead* v. *McConnell*, 3 Barb. 176; *Damp* v. *Town of Dane*, 29 Wisconsin, 419; *Mulligan* v. *Smith*, 59 California, 206; *Peters* v. *Peters*, 8 Cush. 529; *Jenks* v. *Howland*, 3 Gray, 536; *Williamson* v. *Berry*, 8 How. 495; *Allen* v. *Dundas*, 3 T. R. 125.

To make a thing adjudged there must be a contentious proceeding with plaintiff and defendant. But the application of the complainant for privileges under the act of March 3, 1875, was essentially *ex parte*. His case is on all fours with the case of *United States* v. *Minor*, 114 U. S. 233; where it was held that the United States are not bound, in cases like the present by the action of land officers in granting public lands.

*Schurz's Case*, 102 U. S. 378, was a case of jurisdiction, exhausted by the sheer force of its exercise, and when the Secretary attempted to recall his act he was already *functus officio*. But in the case at bar the Department never had jurisdiction. What Secretary Vilas did was a nullity. What Secretary Noble proposes to do is to deal with it as a nullity.

*Mr. Frederic D. McKenney*, (with whom was *Mr. S. F. Phillips* on the brief,) for appellee.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

This case involves not only the power of this court to enjoin the Head of a Department, but the power of a Secretary of

the Interior to annul the action of his predecessor, when such action operates to give effect to a grant of public lands to a railroad corporation.

1. With regard to the judicial power in cases of this kind, it was held by this court as early as 1803, in the great case of *Marbury* v. *Madison*, 1 Cranch, 137, that there was a distinction between acts involving the exercise of judgment or discretion and those which are purely ministerial; that, with respect to the former, there exists, and can exist, no power to control the executive discretion, however erroneous its exercise may seem to have been, but with respect to ministerial duties, an act or refusal to act is, or may become, the subject of review by the courts. The principle of this case was applied in *Kendall* v. *Stokes*, 12 Pet. 524, and the action of the Circuit Court sustained in a proceeding where it had commanded the Postmaster General to credit the relator with a certain sum awarded to him by the Solicitor of the Treasury under an act of Congress authorizing the latter to adjust the claim, this being regarded as purely a ministerial duty. In *Decatur* v. *Paulding*, 14 Pet. 497, a *mandamus* was refused upon the same principle, to compel the Secretary of the Navy to allow to the widow of Commodore Decatur a certain pension and arrearages. Indeed, the reports of this court abound with authorities to the same effect. *Kendall* v. *Stokes*, 3 How. 87; *Brashear* v. *Mason*, 6 How. 92; *Reeside* v. *Walker*, 11 How. 272; *Commissioner of Patents* v. *Whiteley*, 4 Wall. 522; *United States* v. *Seaman*, 17 How. 224, 231; *United States* v. *Guthrie*, 17 How. 284; *United States* v. *The Commissioner*, 5 Wall. 563; *Gaines* v. *Thompson*, 7 Wall. 347; *The Secretary* v. *McGarrahan*, 9 Wall. 298; *United States* v. *Schurz*, 102 U. S. 378; *Butterworth* v. *Hoe*, 112 U. S. 50; *United States* v. *Black*, 128 U. S. 40. In all these cases the distinction between judicial and ministerial acts is commented upon and enforced.

We have no doubt the principle of these decisions applies to a case wherein it is contended that the act of the Head of a Department, under any view that could be taken of the facts that were laid before him, was *ultra vires*, and beyond the

scope of his authority. If he has no power at all to do the act complained of, he is as much subject to an injunction as he would be to a mandamus if he refused to do an act which the law plainly required him to do. As observed by Mr. Justice Bradley in *Board of Liquidation* v. *McComb,* 92 U. S. 531, 541: "But it has been well settled that when a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a *mandamus* to compel its performance; and when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction to prevent it. In such cases the writs of *mandamus* and injunction are somewhat correlative to each other."

2. At the time the documents required by the act of 1875 were laid before Mr. Vilas, then Secretary of the Interior, it became his duty to examine them, and to determine, amongst other things, whether the railroad authorized by the articles of incorporation was such a one as was contemplated by the act of Congress. Upon being satisfied of this fact, and that all the other requirements of the act had been observed, he was authorized to approve the profile of the road, and to cause such approval to be noted upon the plats in the land office for the district where such land was located. When this was done, the granting section of the act became operative, and vested in the railroad company a right of way through the public lands to the extent of 100 feet on each side of the central line of the road. *Frasher* v. *O'Connor,* 115 U. S. 102.

The position of the defendants in this connection is, that the existence of a railroad, with the duties and liabilities of a common carrier of freight and passengers, was a jurisdictional fact, without which the Secretary had no power to act, and that in this case he was imposed upon by the fraudulent representations of the plaintiff, and that it was competent for his successor to revoke the approval thus obtained; in other words, that the proceedings were a nullity, and that his want of jurisdiction to approve the map may be set up as a defence to this suit.

It is true that in every proceeding of a judicial nature, there are one or more facts which are strictly jurisdictional, the existence of which is necessary to the validity of the proceedings, and without which the act of the court is a mere nullity; such, for example, as the service of process within the State upon the defendant in a common law action, *D'Arcy* v. *Ketchum,* 11 How. 165; *Webster* v. *Reid,* 11 How. 437; *Harris* v. *Hardeman,* 14 How. 334; *Pennoyer* v. *Neff,* 95 U. S. 714; *Borden* v. *Fitch,* 15 Johns. 121; the seizure and possession of the *res* within the baili<sup>ck</sup> in a proceeding *in rem, Rose* v. *Himely,* 4 Cranch, 241; *Thompson* v. *Whitman,* 18 Wall. 457; a publication in strict accordance with the statute, where the property of an absent defendant is sought to be charged, *Galpin* v. *Page,* 18 Wall. 350; *Guaranty Trust Co.* v. *Green Cove Railroad,* 139 U. S. 137. So, if the court appoint an administrator of the estate of a living person, or, in a case where there is an executor capable of acting, *Griffith* v. *Frazier,* 8 Cranch, 9; or condemns as lawful prize a vessel tl    vas never captured, *Rose* v. *Himely,* 4 Cranch, 241, 269; or a court-martial proceeds and sentences a person not in the military or naval service, *Wise* v. *Withers,* 3 Cranch, 331; or the Land Department issues a patent for land which has already been reserved or granted to another person, the act is not voidable merely, but void. In these and similar cases the action of the court or officer fails for want of jurisdiction over the person or subject-matter. The proceeding is a nullity, and its invalidity may be shown in a collateral proceeding.

There is, however, another class of facts which are termed *quasi* jurisdictional, which are necessary to be alleged and proved in order to set the machinery of the law in motion, but which, when properly alleged and established to the satisfaction of the court, cannot be attacked collaterally. With respect to these facts, the finding of the court is as conclusively presumed to be correct as its finding with respect to any other matter in issue between the parties. Examples of these are the allegations and proof of the requisite diversity of citizenship, or the amount in controversy in a Federal court, which, when found by such court, cannot be questioned collaterally; *Des*

*Moines Nav. Co.* v. *Iowa Homestead Co.*, 123 U. S. 552; *In re Sawyer*, 124 U. S. 200, 220; the existence and amount of the debt of a petitioning debtor in an involuntary bankruptcy; *Michaels* v. *Post*, 21 Wall. 398; *Betts* v. *Bagley*, 12 Pick. 572; the fact that there is insufficient personal property to pay the debts of a decedent, when application is made to sell his real estate; *Comstock* v. *Crawford*, 3 Wall. 396; *Grignon's Lessee* v. *Astor*, 2 How. 319; *Florentine* v. *Barton*, 2 Wall. 210; the fact that one of the heirs of an estate had reached his majority, when the act provided that the estate should not be sold if all the heirs were minors; *Thompson* v. *Tolmie*, 2 Pet. 157; and others of a kindred nature, where the want of jurisdiction does not go to the subject-matter or the parties, but to a preliminary fact necessary to be proven to authorize the court to act. Other cases of this description are, *Hudson* v. *Guestier*, 6 Cranch, 281; *Ex parte Watkins*, 3 Pet. 193; *United States* v. *Arredondo*, 6 Pet. 691, 709; *Dyckman* v. *New York City*, 5 N. Y. 434; *Jackson* v. *Crawfords*, 12 Wend. 533; *Jackson* v. *Robinson*, 4 Wend. 434; *Fisher* v. *Bassett*, 9 Leigh, 119, 131; *Wright* v. *Douglass*, 10 Barb. 97, 111. In this class of cases, if the allegation be properly made, and the jurisdiction be found by the court, such finding is conclusive and binding in every collateral proceeding. And even if the court be imposed upon, by false testimony, its finding can only be impeached in a proceeding instituted directly for that purpose. *Simms* v. *Slacum*, 3 Cranch, 300.

This distinction has been taken in a large number of cases in this court, in which the validity of land patents has been attacked collaterally, and it has always been held that the existence of lands subject to be patented was the only necessary prerequisite to a valid patent. In the one class of cases, it is held that if the land attempted to be patented had been reserved, or was at the time no part of the public domain, the Land Department had no jurisdiction over it and no power or authority to dispose of it. In such cases its action in certifying the lands under a railroad grant, or in issuing a patent, is not merely irregular, but absolutely void, and may be shown to be so in any collateral proceeding. *Polk's Lessee* v. *Wen-*

*dall,* 9 Cranch, 87; *Patterson* v. *Winn,* 11 Wheat. 380; *Jackson* v. *Lawton,* 10 Johns. 23; *Minter* v. *Crommelin,* 18 How. 87; *Reichart* v. *Felps,* 6 Wall. 160; *Kansas Pacific Railway* v. *Dunmeyer,* 113 U. S. 629; *United States* v. *Southern Pacific Railroad,* 146 U. S. 570.

Upon the other hand, if the patent be for lands which the Land Department had authority to convey, but it was imposed upon, or was induced by false representations to issue a patent, the finding of the department upon such facts cannot be collaterally impeached, and the patent can only be avoided by proceedings taken for that purpose. As was said in *Smelting Co.* v. *Kemp,* 104 U. S. 636, 640: "In that respect they" (the officers of the Land Department) "exercise a judicial function, and, therefore, it has been held in various instances by this court that their judgment as to matters of fact, properly determinable by them, is conclusive when brought to notice in a collateral proceeding. Their judgment in such cases is, like that of other special tribunals upon matters within their exclusive jurisdiction, unassailable except by a direct proceeding for its correction or annulment." In *French* v. *Fyan,* 93 U. S. 169, it was held that the action of the Secretary of the Interior identifying swamp lands, making lists thereof and issuing patents therefor, could not be impeached in an action at law by showing that the lands which the patent conveyed were not in fact swamp and overflowed lands, although his jurisdiction extended only to lands of that class. Other illustrations of this principle are found in *Johnson* v. *Towsley,* 13 Wall. 72; *Moore* v. *Robbins,* 96 U. S. 530; *Steel* v. *Smelting Co.,* 106 U. S. 447; *Quinby* v. *Conlan,* 104 U. S. 420; *Vance* v. *Burbank,* 101 U. S. 514; *Hoofnagle* v. *Anderson,* 7 Wheat. 212; *Ehrhardt* v. *Hogaboom,* 115 U. S. 67. In *Moore* v. *Robbins,* 96 U. S. 530, 533, it was said directly that it is a part of the daily business of officers of the Land Department to decide when a party has by purchase, by preëmption or by any other recognized mode, established a right to receive from the government a title to any part of the public domain. This decision is subject to an appeal to the Secretary of the Interior, if taken in time; "but if no such appeal be taken, and the patent issued under the

seal of the United States, and sign d by the President, is delivered to and accepted by the party, the title of the government passes with this . delivery. With the title passes away all authority or control of the Executive Department over the land, and over the title which it has conveyed. . . . . The functions of that department necessarily cease when the title has passed from the government."

We think the case under consideration falls within this latter class. The lands over which the right of way was granted were public lands subject to the operation of the statute, and the question whether the plaintiff was entitled to the benefit of the grant was one which it was competent for the Secretary of the Interior to decide, and when decided, and his approval was noted upon the plats, the first section of the act vested the right of way in the railroad company. The language of that section is " that the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any State or Territory," etc. The uniform rule of this court has been that such an act was a grant *in præsenti* of lands to be thereafter identified. *Railway Company v. Alling*, 99 U. S. 463. The railroad company became at once vested with a right of property in these lands, of which they can only be deprived by a proceeding taken directly for that purpose. If it were made to appear that the right of way had been obtained by fraud, a bill would doubtless lie by the United States for the cancellation and annulment of an approval thus obtained. *Moffat v. United States*, 112 U. S. 24; *United States v. Minor*, 114 U. S. 233. A revocation of the approval of the Secretary of the Interior, however, by his successor in office was an attempt to deprive the plaintiff of its property without due process of law, and was, therefore, void. As was said by Mr. Justice Grier, in *United States v. Stone*, 2 Wall. 525, 535 : " One officer of the land office is not competent to cancel or annul the act of his predecessor. That is a judicial act and requires the judgment of a court." *Moore v. Robbins*, 96 U. S. 530. The case of *United States v. Schurz*, 102 U. S. 378, 402, is full authority for the position assumed by the plaintiff in the case at bar.

In this case the relator had been adjudged to be entitled to 160 acres of the public lands; the patent had been regularly signed, sealed, countersigned and recorded; and it was held that a *mandamus* to the Secretary of the Interior to deliver the patent to the relator should be granted. It was said in this case by Mr. Justice Miller: "Whenever this takes place" (that is, when a patent is duly executed) "the land has ceased to be the land of the government, or, to speak in technical language, title has passed from the government, and the power of these officers to deal with it has also passed away."

It was not competent for the Secretary of the Interior thus to revoke the action of his predecessor, and the decree of the court below must, therefore, be                     *Affirmed.*