## CASPER v. DORAN et al.

District Court, E. D. Pennsylvania. January 31, 1929.

No. 4781.

Patrick J. Friel, of Philadelphia, Pa., for plaintiff.

R. H. Woolsey and George W. Coles, U. S. Atty., both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. ■ This hearing has partaken of a reargument of the question of whether a basic permit, once granted to the manufacturer of a nonbeverage "article," can be revoked otherwise than in the method prescribed by Congress for the revocation of a permit by section 9 of title 2 of the National Prohibition Act (27 USCA § 21). More especially, it is whether such permit can be annulled by the expedient of granting it for a year, so that it will expire by time limitation, thus requiring the permittee to apply for a new permit, and thereby submitting his claims to a permit to the exercise of the discretion of the Commissioner. A number of cases raising the like question were argued together. We dispose of all of them in one opinion.

The permit authorities, for reasons which can be readily sensed, whether avowed or not, attach much importance to this extension of their control over those engaged in the business outlined in section 4 of title 2, 27 USCA § 13. Indeed, many who are interested in the general subject of the enforcement of national prohibition are of the settled opinion that the supply of alcohol to the tribe of outlaws from whom the bootleggers receive their stocks of illicit liquor cannot be effectively stopped unless control of the trade in question is confided to the Prohibition enforcement officers.

Because the question is of such importance, we have been favored with a very full and ably presented argument in support of the lawfulness of the control sought and a most forceful appeal to have this view prevail. A decent respect for the opinion the defendants, along with many others, entertain, as well as for the well-considered arguments advanced by counsel who have so thoroughly studied and ably elucidated the subject, calls and indeed provides us with the only excuse we have for the discussion of the question at greater length than we would otherwise feel justified in doing. Indeed, all which can be said has already been so often said that its reiteration is triteness.

We have already mentioned the contribution to efficiency which would flow from giving to the permit authorities discretionary control over not merely the original issue of permits, but likewise over their continuance. Opposed to this is the very great danger of evils to follow in the wake of the grant of such a power. No one can shut his eyes to the reality of the evils which would be sure to be let loose. Congress, as before often observed, was compelled to make its choice between the risks of two sets of evils and to encounter one or the other. The comment has also often before been made that the question at the bottom is between government by law and government by men.

We are still repeating what has again been often said when we start with the proposition that the Eighteenth Amendment and the national prohibition law are aimed, not at the use of alcohol, but at its use as the basis of a beverage, and not even at its use as a beverage, but at the traffic in it, and not even at the traffic in alcohol, but at the traffic in it for beverage purposes. Alcohol has a wide and important use in the arts, which is in no sense unlawful. The supply of it for this

lawful purpose affords opportunity, and doubtless temptation, for its diversion to unlawful uses, and because of this Congress has exercised the power conferred to regulate its lawful use, as well as to forbid the unlawful.

Intoxicating liquor, even in potable form, likewise has its lawful uses. Congress recognized this distinction between potable liquor and liquor which is nonpotable, but which may be rendered potable by unlawful manipulation, and deals separately with each. Potable liquor (including raw alcohol) is defined in the act by enumeration, and designated as "liquor" and nonpotable products, into the manufacture of which alcohol enters as an ingredient, are likewise defined by enumeration and designated and distinguished as "articles." None of these "liquors" (other than alcohol itself) and none of the "articles," can be produced without a supply of alcohol, and there are safeguards against illicit products thrown around each, as well as the production of alcohol itself.

The argument in support of the time limitation of the permit begins and ends with the provision in one clause of section 6 of title 2 of the act (27 USCA § 16), which undoubtedly limits all permits there mentioned to an expiration on the last day of each month. It is just as clear, however, that this clause refers to permits to produce "liquor," as defined in the act, and that it does not refer to permits to manufacture the "articles," the manufacture of which is provided for in section 4 of title 2.

The argument is addressed to us that the quoted clause in section 6 of title 2 must include permits to engage in nonbeverage articles, because otherwise there would be no provision for the appeal to the court in the case of the refusal or revocation of permits granted to manufacturers of nonbeverage articles named in section 4 of title 2. A reading of the act takes all force from this argument, because it is thus made clear that the time limitation clause includes only permits to produce alcohol and potable liquors, and the clauses providing for reviews by the courts apply to *all* permits, being thus inclusive of both potable "liquor" permits and permits for nonpotable "articles."

The argument built upon the theory that these permittees voluntarily "surrendered" the permits originally granted to them and accepted permits limited to a year is likewise wanting in persuasiveness. Such a theory is wholly disingenuous. No one could find such a surrender in fact. It has no existence, except as a figment, and, moreover, we are here dealing with a proposition of law, to wit, whether a permittee, otherwise with the right to a supply of alcohol, can be deprived of that right in any way other than the way provided by the law. Surely the permittee cannot change the law, nor can any department of the government, nor can the two of them acting together.

The final stand of the permit authorities is upon the power to make rules and regulations which have the force of law under section 13 of title 3. 27 USCA § 83. The language of this section gives no aid to any argument built upon it that the permit authorities can revoke a permit otherwise than by a judicial finding, based upon proven evidentiary facts. The suggestion that they are not revoking the basic permit granted to this permittee, but merely cutting off his supply of alcohol, has no force. A basic permit is defined to be a permit to engage in the business of manufacturing some one or more of nonpotable articles and to obtain a supply of alcohol for this purpose. To deny the supply is to revoke the permit.

The question discussed has been before several of the courts in other circuits. If there was uniformity among them, and we could accept the rulings made, we would defer to them, for the reason that the law should have the same meaning throughout the United States. They, however, do not agree, and we must add one more to these discordant rulings. Among the cases cited are the following:

Cywan v. Blair (D. C.) 16 F.\2d) 279, although it discusses the question of right to the permit, the renewal of which was there refused, really rests upon the doctrine that an application for an injunction, and emphatically an ad interim one, is of grace, and not of right, and is an appeal to the conscience of a chancellor, and the conscience of the chancellor was not moved to grant it. The question before us is, however, discussed, and, if the chancellor found that the permittee had a right to the renewal, the injunction would have been awarded.

Higgins v. Foster, 12 F.(2d) 646, was before the Circuit Court of Appeals of the Second Circuit, and squarely faces and very helpfully discusses the question here presented. The value of the ruling is enhanced by the circumstances that the court was of opinion that the fact merits of the case before it would have supported a revoking citation.

Rock v. Blair (D. C.) 13 F.(2d) 1004, fully supports the view that a basic permit is a recognition of the right to manufacture a nonbeverage "article," and that this confers the right to a supply of alcohol which cannot

be refused otherwise than by a revocation of the permit.

Chicago Grain Products Co. v. Mellon (C. C. A.) 14 F.(2d) 362, was ruled after the Higgins Case and is out of accord with it. The gist of the opinion in the Chicago Case is that, unless the time limitation clause of section 6, title 2, applies to nonbeverage basic permits, then Congress had "provided that certain permits should be strictly limited," and that for others "no limitation at all was provided." The opinion is expressed that these permits do not differ "in kind, purpose, or importance."

As we read the National Prohibition Act, Congress did intend to do the very thing suggested. There is again the greatest possible difference between the two kinds of business. The restricted permit related to a forbidden product, to wit, an intoxicating alcoholic beverage, which was primarily an unlawful thing, and only lawful when devoted to a very limited use. The producer was in consequence kept under the strictest surveillance. The unrestricted permit was for a lawful product, which had nothing to do with intoxicating beverages, except that an opportunity was thereby afforded for an unlawful diversion. The permittee was in consequence to be left free to carry on his lawful business as long as he was guilty of no unlawful act. We are, of course, concerned, not with what Congress would have had good reason to do, but with what it did. We hold that it did make a distinction between the two kinds of permits, and can see a very persuasive reason for doing as it did.

The distinction is not only expressed with verbal precision but the reason for making it is intelligible. The quoted clause of section 6 of title 2 applies to all alcoholic beverage plants, whose product is an unlawful one, except for a very restricted use; it does not apply to nonbeverage or nonalcoholic beverage plants, whose products are lawful, but who may be guilty of unlawful diversion. If so guilty, the permits may be revoked; if not so guilty, they may continue in a lawful business.

The distinction between original applications and permits once granted are illustrated by Wilson v. Bowers (D. C.) 14 F.(2d) 976, and Milillo v. Canfield (C. C. A.) 14 F. (2d) 113. The conclusion we have reached is that the Commissioner cannot deny to the permittee the benefits of his permit by simply refusing to renew it at the end of any year.

A formal decree in accordance with this opinion may be submitted in each of the cases argued.