GMO. NIEHAUS & CO., C por A., a cor-
poration organized under the laws of
Costa Rica, Apartado 493 San Jose,
Costa Rica, and Imke Steinhoff, Kurt
Niehaus, Gertrude Boese, Franz Laue
and Horst Laue, sometimes incorrectly
designated as Franz Boese and Horst
Boese, all % Dr. Hans Loening, Soege-
strasse 18/20 Bremen, Germany

v.

UNITED STATES.

No. 501–56.

United States Court of Claims.
Feb. 11, 1959.

Philip W. Amram, Washington, D. C.,
for plaintiffs, Laurence A. Knapp, Wash-
ington, D. C., was on the brief.

George B. Searls, Washington, D. C.,
with whom was George Cochran Doub
and Dallas S. Townsend, Asst. Attys.
Gen., Washington, D. C., for defendant.
M. Morton Weinstein, Washington, D.
C., was on the briefs.

MADDEN, Judge.

In a prior proceeding in this case the
Government moved to dismiss the plain-
tiff's petition on the asserted grounds
that this court had no jurisdiction of the
subject matter and that the petition
failed to state a cause of action upon
which relief could be granted. This
court denied that motion, in an opinion
rendered July 12, 1957, 153 F.Supp. 428,
139 Ct.Cl. 605. Thereupon the Govern-
ment filed an answer to the petition,
made the instant motion for a summary
judgment, and submitted affidavits of
four officials of the Government, the
complete text of a letter dated July 9,
1951, from the President of the United
States to the Vice President, the text
of a press release, and other documents
from the files of the Alien Property
Custodian. The plaintiffs oppose the
Government's motion for summary judg-
ment. They have not submitted affi-
davits or other documents.

The essential elements of the case may be gathered from our prior opinion, and will not be repeated here. After that opinion was rendered, the Government, as we have said, filed its answer. In its answer it has directly denied the allegation of the petition that the President, before the vesting of the plaintiff's property on July 26, 1951, "had limited and confined the vesting power to the vesting of German property and rights located in the United States before January 1, 1947." The Government points out that the plaintiff's petition contains "no allegation of the date when such limitation was imposed, or of how it was imposed, and no reference to any executive order or other specified official act."

The First War Powers Act, 1941 (55 Stat. 838), amended section 5(b) (1) of the Trading with the Enemy Act, 50 U. S.C.A.Appendix, §§ 1–40, to make it provide that any property of a foreign national "shall vest, when, as, and upon the terms, directed by the President, in such agency or person as may be designated from time to time by the President * * *." By Executive Order No. 9095 dated March 11, 1942, (7 F.R. 1971), the President created the Office of Alien Property Custodian, and provided that the property of a foreign national should "vest in the Alien Property Custodian whenever the Alien Property Custodian shall so direct." [1]

On October 14, 1946, by Executive Order No. 9788 (11 F.R. 11981), 50 U.S. C.A.Appendix, § 6 note, the President terminated the Office of Alien Property Custodian and transferred all the authority and functions of the Custodian to the Attorney General. The order made no change in the vesting power.

On December 31, 1946, the President proclaimed the cessation of hostilities in World War II but stated that "a state of war still exists." Proclamation No. 2714, 12 F.R. 1, 50 U.S.C.A.Appendix, § 601 note. That Proclamation did not affect the vesting power.

On March 4, 1947, an important press release was issued by the Secretaries of the Treasury, State and War, and the Attorney General. It announced new rules with regard to trade with enemy countries and treatment of the property of alien enemies. It was a document of several pages, and contained the following statement:

"In this connection, the Attorney General also announced that henceforth, in general, the Office of Alien Property, Department of Justice, will not vest German or Japanese interests acquired after December 31, 1946."

The Attorney General's statement went on to say that fiduciaries who had previously been required to report the existence of enemy property so acquired need no longer report it, and were free to transfer it. The statement said that these changes were accomplished by amendments of the rules of the office of alien property. We are not advised as to the text of these amendments of the rules.

The Attorney General's statement also contained this paragraph:

"It was pointed out, however, that in cases where a property interest was acquired before December 31, 1946, by Germans or Japanese who have been within Germany, Italy, Hungary, Bulgaria or Rumania on or since January 1, 1945, the restrictions of General Ruling No. 11A are still applicable, and such an interest would be subject to vesting by the Department of Justice. This would also be true of income on property blocked on December 31, 1946."

The press release was an invitation and assurance to aliens that they might

1. Executive Order 9193, dated July 6, 1942 (7 F.R. 5205), Executive Order No. 9567 (10 F.R. 6917) dated June 8, 1945, and Executive Order 9760 (11 F.R. 7999) dated July 23, 1946, 50 U.S. C.A.Appendix, § 6 note, all related to the vesting of alien property, but contained nothing of direct significance to the present proceeding.

bring property into or acquire property in this country without danger of confiscation. The abandonment of the requirement that such property be reported to the Office of Alien Property was a statement that that office was no longer interested in such property. The statement in the paragraph last quoted that "such an interest" that is, an interest in property acquired before December 31, 1946, "would be subject to vesting" amounted to a statement that an interest acquired after that date would not be subject to vesting.

The Government urges that the words "in general" in the Attorney General's statement negative all the inferences that might otherwise be drawn from it. If they do, the invitation was a trap. We have no idea that it was used, in fact, not to promote commercial intercourse but to enrich the treasury. Whether any such property, other than that of the plaintiffs, was vested, we are not advised. What the Attorney General meant when he wrote the words "in general" we are not advised.

The Government has submitted affidavits of persons who would have been in a position to know of any other directives or official statements relating to the question at hand. They say they know of none.

On July 9, 1951, the President wrote identical letters to the Vice President, as President of the Senate, and to the Speaker of the House of Representatives, asking them to place before their respective legislative bodies the President's proposal for congressional action terminating the state of war between the United States and Germany, but preserving the right of the United States to vest the property of Germans which was acquired by them before January 1, 1947. The President's letters each contained the following paragraph:

"Furthermore, it is not intended that the termination of the state of war shall in any way change or alter the program, which Congress has authorized, of seizing under the Trading With the Enemy Act, German property in this country on or before December 31, 1946, and using the proceeds to pay just and legitimate claims arising from the war in accordance with the War Claims Act of 1948 [50 U.S.C.A. Appendix, § 2001 et seq.]. The vesting of German property under this program does not extend to property acquired since the resumption of trade with Germany on January 1, 1947, following the cessation of hostilities. It is limited to German property and rights located here before or during the period of hostilities."

It is not conceivable that this important communication from the President to Congress, relating to our legal relations with Germany and particularly to our treatment of the property of Germans, would have been written without consultation with the Attorney General, who was also the Custodian of Alien Property. The statement was a representation to Congress by the President, who had been entrusted by Congress with complete authority over the subject of alien property, as to how that authority had been exercised. The representation was made for the purpose of inducing legislation, and it did induce the desired legislation. The Joint Resolution, Public Law 181, 65 Stat. 451, approved October 19, 1951, 50 U.S.C.A. Appendix, preceding section 1, shows that Congress took the President's statement for what it plainly said, i. e., that property acquired by Germans after December 31, 1946, was not subject to vesting, and that the requested new legislation should continue that situation.

The petition alleges that on July 26, 1951, the Assistant Attorney General who was the Director of the Office of Alien Property, issued the vesting order here in question. It alleges that the property was acquired by the German plaintiffs after December 31, 1946.

Since the President was the official entrusted by Congress to determine what property was subject to vesting, and since the President had formally stated

**422**

to Congress on July 9, 1951, that property such as that here in question was not subject to vesting, the property was not subject to vesting. Any misunderstanding by the President's subordinates, and any action later taken by them in contradiction of the President's expressed determination, could not affect the President's power to make the determination, nor the consequences of its having been made.

The defendant's motion for summary judgment is denied.

It is so ordered.