Eleanor ZIRIN, Appellant,

v.

E. A. McGINNES, District Director of Internal Revenue.

No. 12812.

United States Court of Appeals Third Circuit.

Argued April 9, 1959.

Reargued Jan. 4, 1960.

Reargued en Banc June 20, 1960.

Decided Aug. 1, 1960.

**114**

Leonard Orloff, Philadelphia, Pa., for appellant.

Alan S. Rosenthal, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Walter E. Alessandroni, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Amram, Hahn & Sundlun, Washington, D. C., submitted brief as amici curiae.

Before BIGGS, Chief Judge, and GOODRICH, McLAUGHLIN, KALODNER, STALEY, HASTIE and FORMAN, Circuit Judges.

STALEY, Circuit Judge

We granted reargument in this case inasmuch as the government presented new and significant material in its petition for rehearing which affects the outcome of this controversy.[1]

The principal question raised on this appeal is whether the District Director of Internal Revenue had authority to discharge an employee of the department.

Appellant, Eleanor Zirin, was dismissed from government employ by the District Director, Philadelphia, Pennsylvania, (appellee) by letter of November 30, 1955, separation to be effective at the close of business December 9, 1955. Appellant was originally appointed to the position of clerk-typist on February 16, 1942, and at the time of her discharge was classified as GS–5, Income Window Teller. On July 5, 1955, she received a letter from her immediate superior indicating that her services were unsatisfactory and that unless corrected within ninety days she would be given an unsatisfactory rating which could result in disciplinary action. The following day appellant acknowledged acceptance of this ninety-day warning letter.

On November 2, 1955, appellant received a subsequent communication from the Acting District Director advising her that her performance rating was unsatisfactory, specifying particulars, and indicating that she was to be separated in not less than thirty days. Within a week appellant answered the charges set forth in the November 2nd letter. Thereafter, on November 30, 1955, appellee notified appellant that her separation was to be effective December 9, 1955, and that she had a right to appeal within ten days of receipt of the letter. Accordingly, on December 5, 1955, she appealed to the Performance Rating Board of Review which held extensive hearings on April 12 and 13, 1956. That Board sustained the unsatisfactory rating. Subsequently, appellant appealed her dismissal, without success, to the Regional Commissioner of Internal Revenue, Phil-

---

1. Pursuant to an order of court issued January 8, 1960, we also granted authority to Amram, Hahn & Sundlun, attorneys for the plaintiff in Everett v. United States, No. 270–57, a cause then pending in the United States Court of Claims, to submit a brief herein as amici curiae.

adelphia, and the Commissioner of Internal Revenue, Washington.

On October 29, 1956, she filed a complaint in the United States District Court for the Eastern District of Pennsylvania, which was amended on April 30, 1957. The appellee filed a motion for summary judgment, and after argument the court by order dated December 31, 1957, stayed all proceedings pending further administrative appeals. Appeals to the United States Civil Service Commission and the Board of Appeals and Review, United States Civil Service Commission, followed and were likewise denied. Thereafter, the case came on for hearing in the district court upon appellee's motion for summary judgment. The motion was ultimately granted by order dated October 30, 1958.

At the threshhold the government contends that the relief sought by appellant is beyond the power of the district court to grant. It is argued that since appellant's suit contemplates affirmative action, in the nature of a mandatory injunction, it is in effect a suit for mandamus and as such cannot be entertained by the district court.

 This analysis tends to oversimplify what is an admittedly difficult area of the law. It is true that the complaint is unartfully drawn, but we are not bound by technical rules of pleading and are required to inquire into what relief is actually sought. If the relief sought is a court order controlling executive officers of the government with respect to the exercise of powers vested in them by statute, it could not be granted because the government has not consented to the suit, has not been made a party, and also because the district court is without power to grant a writ of mandamus or a mandatory injunction to like effect. Updegraff v. Talbott, 4 Cir., 1955, 221 F.2d 342. However, such is not this case. Here the appellee is alleged to have committed an *ultra vires* act, and an injunction may be properly framed

to substantially accomplish what the appellant desires, i. e., recognition that she was never legally separated. Noble v. Union River Logging R. Co., 1893, 147 U.S. 165, 13 S.Ct. 271, 37 L.Ed. 123; Board of Liquidation v. McComb, 1875, 92 U.S. 531, 23 L.Ed. 623. Nor need such an order go as far as that issued in Wilson v. Bowers, D.C.S.D.N.Y.1924, 14 F.2d 976, 977. Judge Augustus Hand indicated "there probably is a distinction * * * between an application for a mandamus requiring an official in general to take certain action and an injunction restraining his refusal upon some particular ground which he sets up as a consideration legally controlling * * *." Also see Perkins v. Elg, 1939, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320; Gibson Howell Co. v. Helvering, 3 Cir., 1935, 80 F.2d 592; Swanson Chemical Corp. v. Doran, D.C.E.D.Pa.1929, 41 F. 2d 784; Casper v. Doran, D.C.E.D.Pa. 1929, 30 F.2d 400, affirmed 3 Cir., 1930, 41 F.2d 994; and Carnioid, Inc. v. Blair, D.C.S.D.N.Y.1926, 15 F.2d 56. In the instant case the appellant may be entitled to an injunction to restrain the appellee from continuing to act in pursuance of the illegal separation. The law is settled that if a federal officer does or attempts to do acts which are in excess of his authority or under authority not validly conferred, equity has jurisdiction to restrain him. State of Colorado v. Toll, 1925, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927; American School of Magnetic Healing v. McAnnulty, 1902, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90; and Harper v. Jones, 10 Cir., 195 F.2d 705, certiorari denied 1952, 344 U.S. 821, 73 S.Ct. 19, 97 L.Ed. 639.

We need not concern ourselves unduly at this time with the question of whether the Secretary of the Treasury or Commissioner of Internal Revenue were indispensable parties. In Williams v. Fanning, 1947, 332 U.S. 490, 494, 68 S.Ct. 188, 189, 92 L.Ed. 95, the test as to whether a superior official can be dispensed with as a party was stated to be

whether "the decree which is entered will effectively grant the relief desired by expending itself on the subordinate official who is before the court." Accord, Hynes v. Grimes Packing Co., 1949, 337 U.S. 86, 69 S.Ct. 968, 93 L.Ed. 1231; State of Colorado v. Toll, 1925, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927; Jeffries v. Olesen, D.C.S.D.Cal.1954, 121 F. Supp. 463. Once the appellee has been enjoined from continuing his action pursuant to an illegal separation, appellant will have received all the relief requested.

■ If we conclude that the dismissal of employees was beyond the power of the District Director here involved, the extensive hearing and administrative appeals that followed could have no curative effect. They were meaningless and as much a nullity as the separation itself.

Appellant's main contention is that her separation or dismissal was unlawful inasmuch as the appellee lacked the authority to separate or dismiss her. The government takes issue with this contention and asserts that the District Director had ample authority to discharge the appellant.

Our consideration of the problem of authority requires a study of the Treasury Reorganization Plan and the various delegations thereunder. Treasury Reorganization Plan No. 26 of 1950, 64 Stat. 1280, 5 U.S.C.A. following section

1332–15 note[2] transferred to the Secretary of the Treasury the function of separating or dismissing an employee of the Internal Revenue Service, one of the departments of the Treasury. The narrow issue in the case is, therefore, the extent to which that power was delegated to subordinate officials and ultimately to the district director.

■ The district court relied upon Treasury Department Order No. 150–27, June 26, 1953. In pertinent part that order delegates to the Commissioner of Internal Revenue authority "to approve all personnel actions effecting appointments, reinstatements, promotions and transfers to positions in the Bureau of Internal Revenue except the following: Deputy Commissioner, Assistant Commissioner."[3] Although this order admittedly does not specifically delegate the authority to dismiss, the government urged and the district court concluded that the power was delegated by implication. The regulation is clear and unambiguous, and any extension of its terms by "implication" would appear to be wholly unwarranted. The enumeration of specific powers to be delegated inexorably leads to the conclusion that it was intended that all other powers be excluded. Iselin v. United States, 1926, 270 U.S. 245, 46 S.Ct. 248, 70 L.Ed. 566. We hold, therefore, that Treasury Department Order No. 150–27 and the regulations issued thereunder do not dele-

2. "Section 1. *Transfer of functions to the Secretary.—*
"(a) Except as otherwise provided in subsection (b) of this section, and subject to the provisions of subsection (c) of this section [neither of which is here relevant], there are hereby transferred to the Secretary of the Treasury all functions of all other officers of the Department of the Treasury and all functions of all agencies and employees of such Department.
"Section 2. *Performance of functions of Secretary.—*
"The Secretary of the Treasury may from time to time make such provisions as he shall deem appropriate author-

izing the performance by any other officer, or by any agency or employee, of the Department of the Treasury of any function of the Secretary, including any function transferred to the Secretary by the provisions of this reorganization plan."

3. This authority was successively redelegated to the Assistant Commissioner (Administration) in Commissioner's Reorganization Order No. 18, July 8, 1953; to Regional Commissioners in Internal Revenue Manual, August 17, 1954; to District Directors of Internal Revenue, RC–PHI—Memorandum No. 18–2, Revised, July 12, 1955.

gate to the District Director the authority to dismiss the appellant.

In its petition for reargument the government did not question the above interpretation of Treasury Department Order No. 150–27, but rather brought to the court's attention another series of delegations which is alleged to provide authority for the contested action of the District Director.

As we have previously noted, the Treasury Reorganization Plan, effective July 31, 1950, transferred dismissal authority to the Secretary of the Treasury. Section 2 of the Act also authorized redelegations of authority by the Secretary to subordinate officials of the department. By Treasury Department Order No. 120, dated July 31, 1950, the Secretary directed that officers of the Treasury Department "* * * continue to perform the functions they were authorized to perform immediately prior to the effective date of the Reorganization Plan * * *."

Prior to the Reorganization Plan the Secretary had delegated to the Director of Personnel, one of his immediate subordinates, "All authority vested in [the Secretary] to take final action on matters pertaining to the employment, direction, and general administration .of personnel under the Treasury Department * * *." Treasury Department Order No. 72, dated October 10, 1946. In addition, the order contained redelegation authority. Pursuant to the authority granted in this order, the Director of Personnel issued Personnel Circular No. 109 (Revised) on March 19, 1951. Some redelegations to Heads of Bureaus were contained therein but specifically excepted was the power of dismissal. It was during the period that this circular was in effect, on June 26, 1953, that Treasury Department Order No. 150–27 was issued. Although similar in many particulars, Order No. 150–27 grants broader authority to the Commissioner in one respect; i.e., personnel actions involving employees in grade GS–13 and above, with the express exception of the Deputy Commissioner and the Assistant Commissioner.

Shortly thereafter, on July 7, 1953, Supplement No. 5 to Personnel Circular No. 109 was issued by the Director of Personnel. Supplement No. 5 provided that henceforth Heads of Bureaus were authorized "* * * to remove or separate employees for cause from positions to which they [Heads of Bureaus] are authorized to approve appointments." Inasmuch as the then effective revision of Personnel Circular No. 109 included the authority to appoint employees (with exceptions not relevant here), the supplement, if it is applicable to the Commissioner of Internal Revenue, authorized removal of employees for cause.

The appellant asserts it is not applicable, placing primary reliance on Gmo. Niehaus & Co. v. United States, 170 F.Supp. 419, decided by the Court of Claims on February 11, 1959. That case dealt with the First War Powers Act, 1941, which amended the Trading with the Enemy Act, 50 U.S.C.A. Appendix, §§ 1–39, vesting enemy property when, as and upon the terms, directed by the President, in such agency or person as may be from time to time designated by the President. These powers were delegated to the Alien Property Custodian in a broad executive order that transferred all the authority the President had been given. The authority was in 1946 transferred to the Attorney General but no change in the vesting power was made. Thereafter, on July 9, 1951, the President wrote identical letters to the Vice President, as President of the Senate, and to the Speaker of the House of Representatives asking for legislation terminating the state of war between the United States and Germany but preserving the vesting power as regards property of Germans which was acquired by them before January 1,

1947. The letter contained the following paragraph:

"Furthermore, it is not intended that the termination of the state of war shall in any way change or alter the program, which Congress has authorized, of seizing under the Trading with the Enemy Act, German property in this country on or before December 31, 1946, and using the proceeds to pay just and legitimate claims arising from the war in accordance with the War Claims Act of 1948. The vesting of German property under this program does not extend to property acquired since the resumption of trade with Germany on January 1, 1947, following the cessation of hostilities. It is limited to German property and rights located here before or during the period of hostilities."

Six months later the Assistant Attorney General issued the vesting order in that case upon property which it was alleged was acquired by the German plaintiffs after December 31, 1946. The Court of Claims held the President was entrusted with the vesting power and since he had formally stated to Congress that property such as that in question was not subject to vesting it was simply not subject to vesting. "Any misunderstanding by the President's subordinates, and any action later taken by them in contradiction of the President's expressed determination, could not affect the President's power to make the determination, nor the consequences of its having been made." 170 F.Supp. at page 422.

However that may be, the Niehaus case is far removed from the facts of the instant appeal. There the President withdrew the very power that the Attorney General later attempted to exercise. In the instant case, appellant asks us to reason that since the Secretary of the Treasury in Order No. 150–27 failed to grant the Commissioner of Internal Revenue the power of dismissal he impliedly withdrew that power from the Director of Personnel. The Niehaus reasoning does not take one that far, and we are unwilling to subscribe to that principle. The Order granted specific powers to the Commissioner, and as to those powers we would infer a withdrawal of authority from the Director of Personnel; however, we fail to see how a failure to grant certain powers to the Commissioner impliedly revokes the powers already vested in the Director and not specifically withdrawn. In fact, this very order provides explicitly that "The provisions of Personnel Circular No. 109 (Revised) dated March 19, 1951, are revised accordingly by this Order." It seems clear to us that the effect of this provision was to reaffirm the powers theretofore given by the Secretary to the Director of Personnel, except for the powers explicitly granted to the Commissioner of Internal Revenue under this Order.

■ Appellant does raise one other issue deserving of consideration. She contends that a judicial tribunal has the right to review administrative action to inquire whether an individual's procedural rights have been safeguarded. However this may be, the appellant overlooks the fact that the present action is instituted only against E. A. McGinnes, the District Director of Internal Revenue. The individual members of the Civil Service Commission, the body to which the dismissal was appealed, have not been made parties to this action. We had occasion to consider a similar problem in the recent case of Adamietz v. Smith, 3 Cir., 1960, 273 F.2d 385, wherein we explicitly held that the members of the Commission were indispensable parties. The cases cited therein completely dispose of this aspect of the case.

The judgment will be affirmed.

KALODNER, Circuit Judge (dissenting).

I agree with the · majority's holding "* * * that Treasury Department Order No. 150–27 and the regulations issued thereunder do not delegate to the District Director the authority to dismiss the appellant."

In my opinion the holding stated is dispositive of this appeal and requires reversal of the judgment of the District Court which was premised on a contrary view.

Treasury Department Order No. 150–27, issued June 26, 1953 by Secretary of the Treasury George M. Humphrey, clearly did not include express authority to the District Director to dismiss, remove or separate an Internal Revenue employee, such as the appellant here. Cognizant of that fact, the District Director, in the instant case, urges that Personnel Circular 109 (Revised), Supplement 5, issued by the Treasury Department Director of Personnel on July 7, 1953—eleven days subsequent to Order No. 150–27—delegated to the District Director authority to dismiss his employees. The District Director says that the Director of Personnel was authorized to issue Personnel Circular No. 109 pursuant to the terms of Treasury Department Order No. 120, effective July 31, 1950 and Treasury Department Order No. 72, effective October 10, 1946, both promulgated by Secretary of the Treasury John W. Snyder.

The majority subscribes to the District Director's contention and bases its affirmance of the District Court's judgment on that subscription.

I disagree with the majority's view in this respect.

The District Director's resort to the 1946 and 1950 Treasury Department Orders in an attempt to give validity to Personnel Circular No. 109 issued eleven days after the 1953 Treasury Department Order, is an obvious "boot-strap" operation which cannot be countenanced.

It is true that the 1946 Treasury Department Order, delegated to the Director of Personnel "all authority vested in me to take final action on matters pertaining to the employment, direction and general administration of personnel under the Treasury Department." It is also true that the 1950 Treasury Department Order provided that all officers, employees, and agencies of the Treasury Department "shall continue to perform the functions they were authorized to perform immediately prior to the [Treasury] Reorganization Plan [effective July 31, 1950] and authorized regulations and procedures in effect immediately prior to the effective date of the Reorganization Plan shall continue in effect *until changed by the appropriate authority.*" (Emphasis supplied.)

However, the 1953 Order, issued by Secretary of the Treasury Humphrey, as the majority has held, did not include any authority to discharge and it thus "changed by appropriate authority" the "authorized regulations and procedures in effect" under the provisions of the 1950 and 1946 Orders.

Moreover, prior to the 1953 Order, Personnel Circular No. 109 (Revised), dated March 1, 1951, which it specifically incorporated by reference, delegated to Heads of Bureaus certain personnel powers *excluding* those stated in Paragraph 4 of that Circular, and included in such exclusions was "Separations". Thus, the situation which obtained under the 1951 Personnel Circular made it mandatory for all Separations to receive "prior approval of the Department."

Since Secretary Humphrey's 1953 Order did not include "Separations" in his new delegations to the Commissioner of Internal Revenue, and further included by specific reference the 1951 Personnel Circular which excluded "Separations" without prior approval by the Secretary of the Treasury, the District Director was without authority in the instant case to dismiss the appellant.

It is clear from the foregoing that the 1953 Personnel Circular, issued by the Director of Personnel eleven days after the promulgation of Secretary Humphrey's 1953 Order, was an attempted usurpation of authority by a subordinate and its unauthorized "delegation" of dismissal powers to the District Director was invalid.

For reasons stated I would reverse the judgment of the District Court and remand with instructions to enter judgment in favor of the appellant.