## WEST, SECRETARY OF THE INTERIOR, *v.* STANDARD OIL COMPANY.

No. 71. Argued October 24, 25, 1928—Decided January 2, 1929.

*Mr. W. Carr Morrow* for petitioner.

202

*Messrs. Oscar Sutro* and *Louis Titus,* with whom *Messrs. Frederic D. McKenney* and *J. Spaulding Flannery* were on the brief; for respondent.

204

Mr. Justice Brandeis delivered the opinion of the Court.

This suit was brought in October, 1925, by the Standard Oil Company in the Supreme Court of the District of Columbia against Dr. Work, the then Secretary of the Interior, to enjoin the continuation of proceedings in the local land office at Visalia, California, ordered by him with a view to ascertaining and determining whether particular lands were known to be mineral in character when the survey of them was accepted. *State of California, Standard Oil Co., Transferees,* 51 L. D. 141. Upon his resignation, Secretary West was substituted as defendant. The proceedings were of the kind commonly employed by the Secretary of the Interior to ascertain the existence of alleged facts reported by a representative of the General Land Office, because of which the title of one claiming public lands is questioned in the Department. The Register and Receiver, after hearing the parties in interest, make report of their findings. These are subject to an appeal, on the evidence, to the Land Commissioner, and also to a further appeal to the Secretary. Upon the ultimate findings, the Commissioner decides, subject to the supervision and control of the Secretary, what action, if any, shall be taken. Compare *George W. Dally*, 41 L. D. 295, 299. Circular No. 460, February 26, 1916, 44 L. D. 572, prescribes the procedure.

The proceedings here involved concern Section 36, Township 30 South, Range 23 East, Mount Diablo B. & M.—that land being in Elks Hills, Kern County, California. Section 36 is one of the sections in each township which, if not mineral or otherwise disposed of, was

granted by Congress to the State of California in aid of public schools, by Act of March 3, 1853, c. 145, § 6, 10 Stat. 244, 246. Under patents issued by the State in 1910, and mesne conveyances, the Standard Oil Company claims title to part, and an interest in the rest, of the section. Drilling on this land, begun in 1918, has been followed by extensive oil mining operations. The proceedings were based on a charge that on January 26, 1903, the date of the approval of the survey, the land was known to be mineral in character. If the land was then known to be mineral, the title confessedly did not pass by the Act. For Congress excluded mineral land from the grant. *Mining Co.* v. *Consolidated Mining Co.,* 102 U. S. 167; *Mullan* v. *United States,* 118 U. S. 271, 276. See also *Wyoming* v. *United States,* 255 U. S. 489, 500; *Work* v. *Louisiana,* 269 U. S. 250, 257-8. If it was not then known to be mineral, the legal title passed to the State on that date. For the land was within one of the sections in place designated in the granting Act. *United States* v. *Morrison,* 240 U. S. 192; *United States* v. *Sweet,* 245 U. S. 563.

The Act of 1853 here involved, like those granting school lands to many other States,[1] makes no provision for determining what part of the land is thus excluded from the grant. It does not provide for the issue of patents or for any equivalent action by the Department to evidence the transfer of title to the State. No patent to the State, or

[1] See Joint Hearings before Senate Committee on Public Lands and Surveys and House Committee on Public Lands on S. 3078 and H. R. 9182, to assure title to granted school lands, February 11 and 12, 1926; Report of Senate Committee No. 603, April 5 [16] 1926, 69th Congress, First Session; Report of House Committee, No. 1617, December 9, 1926, 69th Congress, Second Session; No. 1761, January 13, 1927, 69th Congress, Second Session; 67 Cong. Record, p. 8424; 68 Cong. Record, pp. 1815, 1820, 2015, 2581. See also Hearings of Subcommittee, 69th Cong., First Session, pursuant to S. Res. 347, Vol. 2, pp. 1987–2062.

evidence of title or interest in another, has in fact been issued by the Secretary of the Interior. Nor has there been in the Department any contest between the State and another claimant which might have resulted in a determination of the character of the land. Whether this land was known to be mineral at the date of the survey must, therefore, be established otherwise. The Standard Oil Company contends that its non-mineral character had, before Secretary Work's order, been established by a final determination in the Department; that thereby the Department lost jurisdiction over the land; and that, for this reason, continuation of the proceedings should be enjoined.[2]

It is true that among the several officers of the Land Department action had repeatedly been taken having some relation to the character of the land prior to the order of Secretary Work. The survey, which was approved January 26, 1903, returned it as mineral. In 1904, a special agent reported it as non-mineral. In 1908, it was temporarily withdrawn from agricultural entry pending examination and classification by the United States Geological Survey. In 1909, the Director of the Geological Survey classified it as oil land. In 1910, the Secretary recommended its withdrawal for a petroleum reserve and the recommendation was approved by the President. In 1912, it was placed in Naval Petroleum Reserve No. 1. On January 14, 1914, the proceedings in the land office here involved were initiated. The papers having been mislaid or misfiled in the local office, the proceedings lay dormant; and process was not served until after March 2, 1921. Then the Register and Receiver were ordered by the Land Commissioner, under Secretary Payne, to proceed in accordance with Circular No. 460. On June 9,

---

[2] By reason of subsection (c) of § 1 of the Act of January 25, 1927, 44 Stat. 1026, the proceedings here involved are not affected by that Act. See 52 L. D. 51–54.

1921, before further action thereon, Secretary Fall directed the Land Commissioner to dismiss the proceedings and notify all parties in interest of the dismissal.

On May 8, 1925, Secretary Work vacated Secretary Fall's order and directed the Register and Receiver to proceed to a hearing of the charge that the land was known to be mineral in character on January 26, 1903.[3] If at the time of Secretary Work's order the Department still had jurisdiction of the land, he possessed the power to review the action of his predecessor and to deal with the matter as freely as he could have done if the dismissal of the proceedings had been his own act or that of a subordinate official. For, so long as the Department retains jurisdiction of the land, administrative orders concerning it are subject to revision. *New Orleans* v. *Paine,* 147 U. S. 261; *Beley* v. *Naphtaly,* 169 U. S. 353, 364; *Lane* v. *Darlington,* 249 U. S. 331; *Parcher* v. *Gillen,* 26 L. D. 34; *Aspen Consolidated Mining Co.* v. *Williams,* 27 L. D. 1. Compare *Louisiana* v. *Garfield,* 211 U. S. 70, 75. If, on the other hand, either Secretary Fall's order of dismissal, or some earlier action of the Government, terminated the jurisdiction of the Department, Secretary Work's order reinstating the proceedings was a nullity; and the Standard Oil Company is entitled to enjoin their continuance. *Noble* v. *Union River Logging R. R. Co.,* 147 U. S. 165; *Lane* v. *Watts,* 234 U. S. 525; *Burke* v. *Southern Pacific R. R. Co.,* 234 U. S. 669, 686.

In support of its contention that the jurisdiction had ended, the Company relied in its bill upon two earlier acts of the Department, besides Secretary Fall's order, as constituting a final determination that the land was not known to be mineral at the date of the approval of the

---

[3] This action was taken after a joint resolution of Congress, dated February 21, 1924, 43 Stat. 15. It is conceded that this fact has no legal significance in the case. The basis on which Secretary Work proceeded is shown in his decision reported in 51 L. D. 141.

survey. The Supreme Court of the District did not pass on the legal effect of the two other acts. Upon the stipulated facts it ruled and found: (1) That Secretary Fall had jurisdiction to determine the known mineral character of Section 36, without awaiting the trial by the local land office and appeals from the findings there made. (2) That the Secretary granted a hearing before himself for the purpose of determining the issues raised by the proceedings and gave notice to all parties in interest of such hearing. (3) That he had before him evidence which he had a right to consider and which supported his dismissal of the proceedings. (4) That he dismissed the proceedings after a consideration of the law and facts and directed that the parties in interest be notified of the dismissal and that the case be closed on the records. (5) That the order of dismissal was reduced to writing by his direction and was a judicial determination of the known mineral character of the land on January 26, 1903. (6) That the order of dismissal reduced to writing was a judgment on the merits, and its correctness could not be questioned by collateral proceedings, except for fraud. A decree for a permanent injunction was entered. That decree was affirmed by the Court of Appeals of the District, 57 App. D. C. 329, 23 F. (2d) 750. This Court granted a writ of certiorari, 276 U. S. 613.

Ordinarily, where an act granting public lands excludes those known to be mineral, the determination of the fact whether a particular tract is of that character rests with the Secretary of the Interior. See *Cameron* v. *United States*, 252 U. S. 450, 464; *Burke* v. *Southern Pacific R. R. Co.*, 234 U. S. 669, 684–87. But compare *Dunbar Lime Co.* v. *Utah-Idaho Sugar Co.*, 17 F. (2d) 351. If such act provides for the issue of a patent, whether it be to pass the title or to furnish evidence that it has passed, the patent imports that final determination of the non-mineral character of the land has been made. The issue of

the patent terminates the jurisdiction of the Department over the land. See *Barden* v. *Northern Pacific R. R.*, 154 U. S. 288, 327–331; *Courtright* v. *Wisconsin Central R. R.* Co., 19 L. D. 410; *Heirs of C. H. Creciat*, 40 L. D. 623. And in the courts the patent is accepted, upon a collateral attack, as affording conclusive evidence of the non-mineral character. *Smelting Co.* v. *Kemp*, 104 U. S. 636, 640, 641; *Barden* v. *Northern Pacific R. R.*, 154 U. S. 288, 327. Similarly, if the granting act provides for other action by the Secretary equivalent to a patent, such as approval of a list of the lands, the approval ends the jurisdiction of the Department, *Cole* v. *Washington*, 37 L. D. 387; *Sewell A. Knapp*, 47 L. D. 152; and it, likewise, imports that the necessary determination has been made. *Chandler* v. *Calumet & Hecla Mining Co.*, 149 U. S. 79. Compare *Fred S. Porter*, 50 L. D. 528, 532–533. Even where the granting act does not require either the issue of a patent to the grantee or such equivalent action, the Secretary may have occasion to make a determination of the known mineral character of the land, as when rights adverse to the grantee are asserted under the mineral, leasing or other laws. See *Work* v. *Braffet*, 276 U. S. 560; *Albert E. Dorff*, 50 L. D. 219; *Utah* v. *Lichliter*, 50 L. D. 231; *George G. Frandsen*, 50 L. D. 516. In such event, the issue of the patent, or other instrument evidencing title, likewise imports that the determination has been made. *Steel* v. *Smelting Co.*, 106 U. S. 447, 451. Compare *State of Louisiana*, 30 L. D. 626. For, in every such case, the determination of the mineral character is a prerequisite to the authority exercised in the performance of a duty imposed. *Smelting Co.* v. *Kemp*, 104 U. S. 636, 640–641.

The Standard Oil Company contends that Secretary Fall determined that the land was not known to be mineral on January 26, 1903; and that this determination in the informal hearing before him was legally an equivalent of a determination of the fact in formal proceedings be-

fore the Register and Receiver under Circular No. 460. We agree that if Secretary Fall had determined as a fact that the land was not then known to be mineral, his order dismissing the proceedings would have had the same legal effect as if it had followed the more formal procedure prescribed by Circular No. 460. For the Secretary is not obliged to employ proceedings in the local land office as the means for making the determination as to the known mineral character. He could himself hear the evidence in the first instance. Nor is he obliged, in so ascertaining the facts, to follow a procedure similar to that prescribed for the local land office. See *Knight* v. *U. S. Land Ass'n*, 142 U. S. 161, 177–178. We assume, without deciding, that if Secretary Fall had determined as a fact that the land was not known to be mineral on January 26, 1903, his order dismissing the proceedings would have ended the jurisdiction of the Department over the land. And this determination would, ordinarily, be conclusive on the courts, even if there were demonstrable error in the admission, or appreciation of evidence. See *Shepley* v. *Cowan*, 91 U. S. 330, 340; *Lee* v. *Johnson*, 116 U. S. 48, 49. But we are of the opinion that Secretary Fall did not make a determination of that fact.

Secretary Fall's order is embodied in a letter sent by his direction to the Commissioner of the General Land Office, which after referring to the proceedings before the Register and Receiver, says:

" The transferees of the State of California, representatives of the Department of Justice, and of the Navy Department appeared before Secretary Fall on June 8, 1921, and presented the matter orally, whereupon, after consideration of the law and facts involved, the Secretary verbally directed that the proceedings be dismissed. You are therefore authorized and directed to dismiss the proceedings against the State of California and its transferees *in re* said secs. 16 and 36. Notify all parties in interest of the dismissal and close the case upon your records."

214

The letter embodying Secretary Fall's direction to dismiss the proceedings does not state why he did so. The Company argues that the dismissal was an order judicial in its nature; that in form the order is a judgment on the merits; that this judgment conclusively implies a finding of the fact that the land was not known to be mineral at the date of the approval of the survey; and that no evidence is admissible to contradict what the order imports. It may be assumed that the hearing was conducted in the judicial manner; that it was what is often called a quasi-judicial proceeding. · But the order of dismissal is not a judgment.[4] Compare *Dickson* v. *Luck Land Co.*, 242 U. S. 371, 374. It was an administrative act. And, unlike such administrative acts as a patent or the approval of a list of lands pursuant to a duty imposed upon the Secretary, the order of dismissal does not carry the implication that all determinations essential to the passing of title have been made. Since it does not, there may be inquiry *in pais* to ascertain whether Secretary Fall actually made such a determination. To that end the occurrences leading up to the entry of the order of dismissal may be examined. Compare *Parcher* v. *Gillen*, 26 L. D. 34; *Harkrader* v. *Goldstein*, 31 L. D. 87.

In the oral argument of counsel for the Company, in this Court, there was perhaps a suggestion that Secretary Fall actually passed upon the known mineral character of the land as of January 26, 1903, when the survey was approved. But no such contention is made in the brief filed here. And when the occurrences which preceded the making of the order are examined, it becomes clear that Secretary Fall made no determination of the contested issue of

[4] The Department has repeatedly ruled that its decisions are not to be controlled by the same strict doctrine of *res judicata* which obtains as to judgments of the courts. *Osborn* v. *Knight*, 23 L. D. 216, 218; *Joseph Pretzel*, 24 L. D. 64, 65; *Ernest B. Gates*, 41 L. D. 384. Compare *Howard A. Robinson*, 43 L. D. 221.

fact, which was to be the subject of a hearing before the local officers if he deemed the issue material. He rested his order of dismissal on a supposed rule of law; holding, on the admitted facts, that the actual known mineral character on January 26, 1903, was not of legal significance. In so ruling, he yielded to the argument of counsel for the Standard Oil Company, who insisted that the then known mineral character had become immaterial, because the Government was estopped, by action taken prior to 1921, from questioning the Company's title. The brief filed by counsel with Secretary Fall prior to his granting the hearing; the notice of the proposed hearing before Secretary Fall on June 8, 1921, given by the Department to the Attorney General and the Secretary of the Navy; and the stenographic report of that hearing, establish that this was the only matter considered by Secretary Fall.

That brief was entitled an " argument in support of the request that the Secretary of the Interior decide that in view of the previous action of the department and of its regulations in force in January, 1903, the title to said section is vested in the State of California or its grantees." [5] The notice recited that the Standard Oil Company and the Pan American Oil Company had " asked to be heard orally in the matter of proposed proceeding by the Government to determine whether or not said section passed to the State of California under its school grant." The hearing

------

[5] The brief states: " There is no reason why this decision as to the title of the State should not be made now without putting the State to the enormous and costly burden of proof, such as was in issue in the Elk Hills case. [*United States* v. *Southern Pacific Company*, 251 U. S. 1.] In other words, if the absence of clear proof of the mineral character of the section in 1903 in the shape of discovery of mineral was sufficient to characterize the land as nonmineral under the regulations and repeated decisions of the department, it will make no difference that by the application of the principles of the Elk Hills case it could be successfully shown that the land within the reasoning of that decision was believed to be mineral land."

consisted of an oral statement by counsel for the Company, interrupted from time to time by questions or remarks. The statement was not a recital of evidence in support of the factual assertion that the land was not known to be mineral on January 26, 1903. It was an argument in support of the legal proposition that the proceedings should be closed without deciding that issue of fact, because certain rules of law, arising from past action of the Department, as well as controlling equities, estopped the Government from denying that the title had passed.[6]

---

[6] The prior action relied upon as vesting title in the State and its transferees was: (1) The fact that the land was classified as non-mineral in 1904, when, upon receipt of a report from Special Agent Ryan that it was non-mineral, it was relieved from suspension; (2) the fact that, on March 6, 1903, the Department adopted an administrative rule respecting school land grants that the State would not be permitted to make lieu selections based on the alleged mineral character of land within a school section, unless it proved that there had been actual discovery or exposure of mineral thereon. Mr. Sutro argued that since under this rule the State could not have made the land the base for a lieu selection, it was legally entitled to retain it; and having acted on the rule, its transferees were unaffected by later decisions of this Court (*Diamond Coal Co.* v. *United States*, 233 U. S. 236; *United States* v. *Southern Pacific Company*, 251 U. S. 1) inconsistent with the rule. In closing he said:

"And I submit that in this case, where there is no fraud, no possible allegation of fraud, where the State, five years after the classification of this land, sold it in good faith to people who bought it in good faith, and who held it for 10 years, and who have now invested some millions of dollars in the land, that the time has passed when the United States can assert its title thereto, and that the United States is estopped by the judgment of this department that this was non-mineral land in 1904, and by its own regulations, which defined it as nonmineral land in 1903. Now if you will ask me what it is I am asking you to do, I will say it is this: I am asking the department to close this case on the ground that the title is in the State, and there is nothing further to investigate." Secretary Fall then said: " What you are asking now is that if convinced that the rule is as you state it, that instead of allowing this case to go to a hearing, and then in event I would hold with you, so deciding at that time, that if I am

The conclusion that Secretary Fall did not determine the known mineral character of the land on January 26, 1903, is alone consistent with the stipulated facts.[7]

Most significant among the stipulated facts is the following: " It was the contention of the transferees from the State, with which contention Assistant Secretary Finney disagreed at the hearing, that it could serve no pur-

---

with you that I should decide it at this time and prevent the delay in the trial? " After some further discussion, Secretary Fall asked: " Is Mr. Sutro's statement of the case practically admitted? " First Assistant Secretary Finney answered: " I think that is substantially the case." Whereupon the Secretary said: " The contest will be dismissed."

[7] The land lies within Naval Petroleum Reserve No. 1; a part of it is immediately adjacent to that involved in *United States* v. *Southern Pacific Company*, 251 U. S. 1, which was rendered in 1919. The fact that the proceedings were pending was not discovered by the Chief of the Field Division of the Land Office until the close of 1920. In February, 1921, the importance of taking immediate action to protect supposed interests of the United States in the land was brought to the attention of the Department of Justice and the Secretary of the Navy. On March 2, 1921, the Commissioner of the General Land Office directed the Register and Receiver and the Chief of the Field Division to take prompt action to determine by proper proceedings whether the land was known to be mineral at the date of the approval of the survey. The advisability of protecting the supposed interests of the Government, pending that determination, by an application for a receiver and an injunction, was considered by the several departments. That course was deemed inadvisable. Conference with representatives of the Company resulted in an agreement that it would endeavor to secure from the Department of the Interior an early hearing and determination with respect to the known mineral character of the land; that, until such determination, there should be no further development thereon; and that the Government would not take any action in court. Thereafter, on several days prior to May 26, 1921, Mr. Oscar Sutro, representing the Standard Oil Company, presented to Secretary Fall and the First Assistant Secretary, a request for an early determination with respect to the title to Section 36. On May 26, he filed with the Secretary the brief above referred to. On May 28, 1921, the Secretary gave the Attorney General and the Secretary of the Navy the notice of hearing above referred to.

pose to take evidence in the local land office to determine the question whether or not said section or the lands adjacent thereto showed structural and geological conditions indicative in 1903 of the existence of oil on said section under conditions justifying developments therefor for the reason that said questions presented an immaterial question of fact and said question was not argued or discussed at the proceedings held on June 8, 1921, or at any conferences prior thereto between the representatives of the transferees and the Secretary of the Interior or the First Assistant Secretary of the Interior, except as shown in the brief and in the transcript of proceedings." [The stenographic report of the hearing above referred to.]

Thus, Secretary Fall did not hear evidence or make a determination on the issue of fact as to the known mineral character of the land within the meaning of the decisions in *Diamond Coal Co.* v. *United States,* 233 U. S. 236 and *Southern Pacific Co.* v. *United States* 251 U. S. 1; and this because he deemed the fact in issue of no legal significance. It is true that in making the ruling of law that the Standard Oil Company's title was unassailable, the Secretary undertook to pass upon the merits of its claim to the land. For he concluded that, because of the conceded facts, urged by the Company's counsel as creating an estoppel, the United States was precluded from questioning the title of the State and its transferees. But that decision could not end the jurisdiction of the Department, unless Congress conferred upon the Secretary of the Interior authority to determine the validity of the Company's claim to the land, as a matter of law, without passing upon the contested issue of fact. To that question we now address ourselves.

Where by the terms of an act, the Secretary is required, upon application of the claimant, to issue a patent, as in *Michigan Land & Lumber Co.* v. *Rust,* 168 U. S. 589, 592; or to certify a list, as in *Frasher* v. *O'Connor,* 115 U. S. 102

115-116; or to approve a location for a right of way, as in *Noble* v. *Union River Logging R. R. Co.*, 147 U. S. 165; or to make a survey and approve a selection, as in *Shaw* v. *Kellogg*, 170 U. S. 312, Congress, by implication, confers upon the Secretary the power to make all determinations of law as well as of fact which are essential to the performance of the duty specifically imposed. After issue of the patent or other like instrument, his findings of facts are conclusive, in the absence of fraud or mistake, not only upon the Department, but upon the courts, *De Cambra* v. *Rogers*, 189 U. S. 119; *Love* v. *Flahive*, 205 U. S. 195, 198; and though his rulings on matters of law are reviewable in the courts, *Doolan* v. *Carr*, 125 U. S. 618, 625; *Wisconsin Central R. R.* v. *Forsythe*, 159 U. S. 46, 61, they are not subject to re-examination by the Department. *Johnson* v. *Towsley*, 13 Wall. 72, 83-84. For in making such determinations he acts as a special tribunal with judicial functions. *Riverside Oil Co.* v. *Hitchcock*, 190 U. S. 316, 324.

But here no similar affirmative duty rested upon the Secretary to the performance of which the determination of the question of law was incidental. Secretary Fall owed no active duty to the State or to any other claimant. His duty in respect to the land was solely that owed to the United States—the duty to preserve its interests therein. The inquiry directed to be made in the local land office had been ordered by a predecessor solely in the performance of that duty. If as a result of the inquiry it should be found that the land was known to be mineral, the Government would, if necessary, bring legal proceedings for possession and for damages or an accounting. If it should be found that the land was not known to be mineral, there would be no occasion for any further departmental action. Secretary Fall had, of course, the power to vacate the order of his predecessor that the Register and Receiver proceed with the investigation. For it is within the dis-

cretion of every Secretary to decide what investigations he shall pursue in the public interest; and no Secretary is obliged to continue an inquiry which he believes to be futile. But the question here is whether he can by action other than the final determination of fact, preclude resumption of the inquiry in the Department, and thereby vest the title of known mineral land in the State.

We think that Congress did not confer upon the Secretary of the Interior the power to pass generally upon the right of the State to the land. When the Secretary has the duty to issue a patent or to furnish other evidence of title of a claimant, he must have authority to determine the questions of law incident to the performance of that duty. *Litchfield* v. *Register,* 9 Wall. 575, 577–578. But here no such duty rested upon him. Compare *Louisiana* v. *Garfield,* 211 U. S. 70, 77. Authority to determine as a fact the known mineral character of the lands falls naturally to the Secretary as "the supervising agent of the government to do justice to all claimants and preserve the rights of the people of the United States" to public lands. *Knight* v. *U. S. Land Ass'n,* 142 U. S. 161, 178. But that authority does not carry the power to relinquish the jurisdiction of the Department over the land without determining, as a fact, that it was non-mineral at the time of the approval of the survey. Compare *Work* v. *Louisiana,* 269 U. S. 250, 261. The broad power of control and supervision conferred upon the Secretary "does not clothe him with any discretion to enlarge or curtail the rights of the grantee, nor to substitute his judgment for the will of Congress as manifested in the granting act." *Payne* v. *Central Pacific Railway Co.,* 255 U. S. 228, 236. See, also, *Burfenning* v. *Chicago, St. Paul &c. Ry.,* 163 U. S. 321; *Daniels* v. *Wagner,* 237 U. S. 547, 558. To read into the legislation, under such circumstances, authority to pass upon the State's claim of right to the land, regardless of its known mineral character, would create, by implication,

a power in direct contravention of the expressed intention of Congress that mineral lands were not granted to the State. Thus, the Secretary would be constituted an agent rather for relinquishing than for preserving the rights of the United States in the public lands. See *Shaw* v. *Kellogg,* 170 U. S. 312, 337–338.

When Secretary Fall undertook to determine, not as a fact whether the land was known to be mineral in 1903, but as a proposition of law that, because of other conceded facts, the Company's title had become unassailable, he acted without authority; and the order of dismissal based thereon did not remove the land from the jurisdiction of the Department.

*Reversed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.