**WILBUR, Secretary of the Interior, v. BURLEY IRRIGATION DISTRICT.**

No. 5395.

Court of Appeals of District of Columbia.
Argued March 11, 1932.
Decided April 11, 1932.

O. H. Graves, of Washington, D. C., for appellant.

E. Barrett Prettyman and P. C. King, Jr., both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is by the Secretary of the Interior from a final decree of the Supreme Court of the District of Columbia granting plaintiff (appellee) an injunction permanently enjoining and restraining the Secretary from reconsidering or rehearing the matter of the ratio of ownership and participation of the Burley irrigation district and the Minidoka irrigation district in the power profits past or future from what is known as the Minidoka irrigation project on the Snake river in the state of Idaho.

The Minidoka project is an irrigation plant established and built by the United States under the Reclamation Act of June 17, 1902, 32 Stat. 388. Two units or divisions of the project are involved in this suit. What is known as the gravity division, comprising 71,000 acres, lies almost entirely on the north side of the Snake river, and constitutes the Minidoka irrigation district. What is known as the pumping division, comprising 49,000 acres, lies on the south side of the Snake river, and constitutes the Burley irrigation district. The respective districts are quasi municipal corporations organized under the laws of the state of Idaho.

In 1904 the Minidoka dam was erected across the channel of the Snake river; the construction being completed in 1906. Water has been 'supplied to the lands in the gravity division, or the Minidoka district, since 1907. Before water could be distributed to the Burley district, power had to be furnished for the pumping of the water. Accordingly, in 1908, the government began construction of an electric power plant at the dam. The first power units were completed in 1909, and since then water has been supplied to the lands of the Burley district.

In 1915, Secretary Lane appointed a board of review to report on the cost of the Minidoka project, in which three items were chiefly involved: (1) The water supply for irrigation; (2) the diversion dam; (3) the power plant. The board found that the cost of the Minidoka dam was $676,575.37, of which $404,662.93, or 59.2 per cent., should be charged to the Minidoka irrigation district, and $271,912.44, or 40.8 per cent., should be charged to the Burley district. The cost of the power house and power equipment was $455,317.40; of which $20,033.96, or 4.4 per cent., should be charged to the Minidoka district, and $435,283.44, or 95.6 per cent., should be charged to the Burley district.

The board also determined a division of the water supply on the basis of 66.5 per cent. to the Minidoka district and 33.5 per cent. to the Burley district; and charged to the Minidoka district 59.2 per cent. of the

cost of the dam, and to the Burley district 40.8 per cent. of the cost. It thus appears that it cost the Burley district 40.8 per cent. of the cost of the dam to divert 33.5 per cent. of the water.

This board also reported upon a cost of the division of the power plant between the respective districts. It found that in the division of the power the pumping unit or the Burley district would consume 7,500 kilowatts, and that the gravity unit, or the Minidoka district, would consume 350 kilowatts, and upon this basis it was recommended that the cost of the power plant be charged 95.6 per cent. to the Burley district and 4.4 per cent. to the Minidoka district.

The board likewise recommended that the price per acre for entry upon irrigable lands in the Burley district be fixed at $56.45 per acre on lands not belonging to the United States, and for entries on public lands at $57.50 per acre.

On November 3, 1915, Secretary Lane, after approval of the foregoing report of the central board of review, gave public notice of the conditions upon which entry might be made on these lands, fixing the charges for irrigable acre as above stated. Water right applications were made by settlers for the irrigable lands within the Burley district at the price fixed in the public notice. These applications were upon forms prescribed by the Secretary. The applications were duly accepted, entries were made by the settlers who went upon the lands, proceeded to irrigate, and improve the same and have been so doing until the present hour.

Under the provisions of the reclamation act, the Secretary of the Interior was authorized, when the proper time arrived in the development of an irrigation project to contract with the district under the project to take over the complete management, control, and ownership of the project. Pursuant to section 5 of the act of Congress of August 13, 1914, 38 Stat. 687 (43 USCA §§ 492, 499), the operation of the gravity unit was taken over by the Minidoka irrigation district on January 1, 1917.

A contract was entered into between Secretary Work and the Burley district on March 15, 1926, under which the district took over the operation, management, and control of the pumping unit. Under this contract, the profits to be derived from the various features of the project as between the Burley and the Minidoka districts were referred to the Secretary for decision, and, after a public hearing, at which both districts were represented, a decision determining a division of the profits from (a) the sale of electrical energy, (b) the rental of grazing lands, and (c) the sale of town lots, was determined. The apportionment of the profits from the sale of electrical energy was retained by the Secretary, as fixed originally by the central board of review and approved by Secretary Lane.

Thereafter the Minidoka district and the Burley district applied to the Secretary for an apportioning and crediting of the accumulated profits from the operation of the power plant as provided in subsection I of section 4 of the Act of December 5, 1924 (43 USCA § 501) as follows: "That whenever the water users take over the care, operation, and maintenance of a project, or a division of a project, the total accumulated net profits, as determined by the Secretary, derived from the operation of project power plants, leasing of project grazing and farm lands, and the sale or use of town sites shall be credited to the construction charge of the project, or a division thereof, and thereafter the net profits from such sources may be used by the water users to be credited annually, first, on account of project construction charge, second, on account of project operation and maintenance charge, and, third, as the water users may direct. No distribution to individual water users shall be made out of any such profits before all obligations to the Government shall have been fully paid."

After due investigation and a hearing, at which both the Burley and Minidoka companies were represented, Secretary Work, on March 14, 1927, rendered a decision apportioning credits of the power profits between the two districts on the basis of 95.6 per cent. to the Burley district, and 4.4 per cent. to the Minidoka district.

The contract provided, with respect to credits under subsections I and J of the Act of December 5, 1924 (43 USCA §§ 501, 526), as follows: "The net profits realized from the various sources named in said Subsections I and J after the date provided in this contract for the taking over of the operation and maintenance of the transferred works by the district, to wit, after April 1, 1926, will be announced and determined each year by the Secretary in a written statement to be sent to the district over the signature of the Secretary."

Secretary Work, in his decision apportioning the power profits between the Burley district and the Minidoka district, said: "As the matter now stands, to state it simply,

the Burley District owns 95.6 per cent. of the power plant, and the Minidoka District the remainder, or 4.4 per cent. To declare that because the operation of the power plant has proven profitable the Minidoka District should be entitled to more than 4.4 per cent. of the profits would be arbitrary, and could only be sustained by holding that the recommendation of the Board of Review was erroneously approved. That I am not prepared to do at this late day—many years after contracts had been entered into with the two districts on the basis thereof."

During the nonirrigation season a portion of the electrical power has been sold for commercial purposes to users located on the Minidoka project. Following the completion of the project, the profits from the sale of surplus power were applied to the extension and improvement of the electrical system. Since 1915 the sale of surplus power for commercial purposes has resulted in a profit. The profits derived from the operation of the power plant to December 31, 1928, amounted to $556,130.12. Of this sum $300,000 has been reserved by the United States under the contracts with the Minidoka and Burley districts for the purchase and installation of machinery to increase the power output. Of the balance, $256,130.12, under the apportionment fixed by Secretary Work, there has been credited to the Burley district $244,860.40, and to the Minidoka district $11,269.72. It is this division of profits that has led to the present litigation.

On March 2, 1929, Secretary West denied a petition of the Minidoka irrigation district for a reconsideration or rehearing of the order of Secretary Work of March 14, 1927. In the decision, Secretary West, holding that he was without jurisdiction to reconsider the order of Secretary Work and reallocate the profits between the contending districts, said: "All the facts now presented to me were before Secretary Work when the order complained of was entered, and it must be assumed that the action taken was the result of careful and deliberate consideration, and that it was taken with full and accurate knowledge of the conditions as they existed on the Minidoka project. On the faith of that ruling, the Burley Irrigation District has acted and has undertaken extensive improvements. The decision of Secretary Work became, in effect, a rule of property and is entitled to all the recognition which such a consequence necessarily gives it. It is obvious that if the rule were to be changed that the rights which the Burley Irrigation District believed that it was entitled to by reason of it, and on belief of the possession of which it undoubtedly would undertake extensive improvements, would be destroyed or at least seriously disturbed. Assuming for the sake of argument that I have the power to reverse or modify the ruling of my predecessor in office, I would not be justified in substituting my judgment for his, unless clearly convinced that his action was wrong. I am not so convinced."

On July 30, 1929, the Minidoka district petitioned Secretary Wilbur for the appointment of a committee to consider and report on a redetermination of the proportion of ownership of the two divisions in the power system, and of the equitable interest of each in the profits derived therefrom. A committee was appointed, and, after investigation, recommended that the profits from the sale of electrical power be divided between the two districts on the basis of 72.7 per cent. to the Burley district and 27.3 per cent. to the Minidoka district. This would amount to a readjustment of the ratio of ownership of the two districts in the power plants, irrespective of their contracts with the government and the apportionment made by Secretary Work in compliance with the authority vested in him by Congress.

When the determination and division of the construction costs of the Minidoka project came before Secretary Lane, he allocated the costs between the several features of the project and also between the two irrigation districts. To the Minidoka district he found a total irrigable acreage of 71,000 acres, and to the Burley district 49,000 acres. For the cost of the dam and the diversion of water from the dam, the Minidoka district was charged with 59.2 per cent. of this cost, and the Burley district with 40.8 per cent. of the cost. As to the division of the cost of the power plant, it was found that the peak demand of the Burley district was 7,500 kilowatts, and of the Minidoka district 350 kilowatts. The cost of the power plant was accordingly charged 95.6 per cent. to the Burley district and 4.4 per cent. to the Minidoka district. It is certainly equitable that the ratio of profits should be on the same proportion as the ratio of cost.

This allocation of the cost of the power plant between the two districts, as found by Secretary Lane, was approved by Secretary Work, and the contracts entered into with the respective district corporations recognized and were based upon this division of costs and profits. The acts of 1924 and 1926 (44 Stat. 481), under which Secretary

Work proceeded, specifically prescribed that his decision should be conclusive and final. It is clear, therefore, that any attempt on the part of the present Secretary to revise, modify, or change these contracts is an interference with property rights already vested; a matter over which the jurisdiction of the Secretary no longer exists.

It is important to note that the injunction here extends only to the redetermination by the Secretary of the proportionate ownership in the Minidoka power project by the Minidoka and Burley irrigation districts. The Secretary possesses certain administrative powers over the distribution of the proceeds received from the operation of the power plant. He has power to credit the net profits annually: First, to the construction charge of the project still remaining due the government; second, to the operation and maintenance; and, third, as the water users may direct. The injunction in no way interferes with his direction and supervision of the operation of the project to this extent; it simply prohibits the Secretary from redetermining the respective property interests that the districts have in the entire project under their respective contracts with the government.

It is elementary that where an officer is charged with the duty of making a final determination of a question involving the property rights of a person, company, or corporation, with respect to the interest of the government therein, injunctive relief to restrain the officer in the process of the performance of his duty will not be granted. But that is not this case. Where a final determination has been made and property rights as a result thereof have become vested, it is not within the jurisdiction of the determining Secretary or his successor in office to review or revise it, and any attempt at such action will be enjoined by the courts. This distinction was clearly enunciated by Mr. Justice Brandeis in West v. Standard Oil Company, 278 U. S. 200, 49 S. Ct. 138, 73 L. Ed. 265. In his able opinion, the justice cites many cases illustrative of the distinction here made.

Neither is the contention of counsel for the government sound that the appellee, by virtue of its appearance at the hearing before Secretary Wilbur, is estopped from pursuing the present remedy. Unquestionably the rule is correct that where parties submit a controversy to a court on its merits and acquiesce in leading the court into error they are estopped to complain of the action of the court as to that particular matter, but the lack of jurisdiction over the subject-matter in controversy can be challenged at any time and place in the course of the proceedings. It may be originally advanced on appeal. The distinction is clearly set forth in Street Grading District v. Hagadorn (C. C. A.) 186 F. 451, 457, as follows: "Ordinarily no party can complain of an error procured or acquiesced in by him. N. Y. Elevated Railroad v. Fifth Nat. Bank, 135 U. S. 432, 10 S. Ct. 743, 34 L. Ed. 231. But this rule cannot prevail when the trial court was without jurisdiction to enter the decree consented to. Thompson v. [Central Ohio] Railroad Companies, 6 Wall. 134, 18 L. Ed. 765; Morgan v. Beloit, 7 Wall. 613, 618, 19 L. Ed. 203."

It is equally clear that there is no adequate remedy at law either against the Secretary or the Minidoka district under which the Burley district corporation could adequately protect its rights.

The decree is affirmed.