NEW JERSEY WORSTED MILLS v. GNICHTEL et al.
No. 2696.

District Court, D. New Jersey.
March 5, 1940.

Lindabury, Depue & Faulks, of Newark, N. J. (Burtis S. Horner, of Newark, N. J., and Laurence Arnold Tanzer, of New York City, of counsel); for plaintiff.

John J. Quinn, U. S. Atty., and B. Thorn Lord, Asst. U. S. Atty., both of Trenton, N. J., and Frank J. Ready, Sp. Asst. to Atty. Gen., for defendants.

FAKE, District Judge.

This action is instituted for the recovery of the sum of $200,709.62 with interest claimed to have been illegally collected on plaintiff's profits and income for the fiscal years ending March 31, 1918 and March 31, 1919.

The question involved is whether the Commissioner of Internal Revenue, after having exercised the discretionary powers vested in him by virtue of the relief provisions of the Revenue Acts of 1917 and 1918, Section 210 of Revenue Act of 1917, 40 Stat. 307, and Sections 327 and 328 of the Revenue Act of 1918, 40 Stat. 1093, and having thereunder allowed plaintiff's application for special assessments and made refunds thereon, may revoke his determinations and retake the whole or any part of the money so refunded, by summary action not subject to judicial review.

There are no disputes as to the facts involved. The parties have presented the case on written stipulation, each side seeking judgment thereon pursuant to Rule 56 of the Rules of Civil Procedure, 28 U. S.C.A. following section 723c.

In view of the foregoing it would seem unnecessary to enter upon any extended recital of the facts and reference thereto will be made here only for the purpose of clarity of expression.

Plaintiff takes the position that the Commissioner's original determination made in 1923 allowing plaintiff's application for special assessment, was the exercise of a final administrative discretion not subject to court review or to reopening by the Commissioner.

The relief sections of the Revenue Act hereinabove cited are dealt with by the United States Supreme Court in the case of Williamsport Wire Rope Co. v. United States, 1928, 277 U.S. 551, 48 S.Ct. 587, 588, 72 L.Ed. 985, wherein it is said: "Sections 327 and 328 were intended to broaden the powers of relief first conferred by section 210 of the War Revenue Act of 1917, c. 63, 40 Stat. 300, 307. It was 'believed necessary to provide a special method of determining the tax for those cases in which the ordinary method of assessment would result in grave hardship or serious inequality.' Senate Report, 65th Cong. 3d Sess. No. 617, p. 14. * * *" "To perform that task, power discretionary in character was necessarily conferred." Id. 277 U.S. page 559, 48 S.Ct. page 589, 72 L.Ed. 985. In the same case it is held that "Congress intended to vest final authority in an administrative agency" (277 U.S. page 561, 48 S.Ct. page 590, 72 L.Ed. 985) and "that the determination whether the taxpayer is entitled to the special assessment was confided by Congress to the Commissioner, and could not, under the Revenue Act of 1918, be challenged in the courts—at least in the absence of fraud or other irregularities." (277 U.S. page 562, 48 S.Ct. page 590, 72 L.Ed. 985.) No question of fraud or irregularities is involved in the instant case.

The rule thus announced has since been followed in numerous cases and is now the well settled law. It follows that this Court is without authority to consider the Commissioner's exercise of discretionary power under the aforesaid relief provisions. The problem here is therefore narrowed down as hereinbefore stated to the bare question as to whether the Commissioner may revoke his determination after

refunds were made by him and accepted by the taxpayer.

In taking the position that the Commissioner may thus reconsider and revoke, the defense cites, among others, the following cases: Austin Co. v. Commissioner, 6 Cir., 35 F.2d 910, certiorari denied 281 U.S. 735, 50 S.Ct. 249, 74 L.Ed. 1150. In that case the Commissioner had exercised his discretionary power under Section 210 of the Act of 1917, made a refund to the taxpayer and thereafter, the Commissioner of his own volition, reconsidered his action and assessed an additional tax. His authority to thus reconsider was sustained by a divided court. In Oak Worsted Mills v. United States, Ct.Cl., 36 F.2d 529, 532, new trial denied Ct.Cl., 38 F.2d 699, certiorari denied on the point involved here, 281 U.S. 717, 50 S.Ct. 465, 74 L.Ed. 1136, affirmed on other grounds, 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415, the Court said:

"Plaintiff also contends that the Commissioner of Internal Revenue, having determined the tax liability of the plaintiff in April, 1922, was without authority to revise it, and that his later action making a new assessment was in excess of his authority, and the new assessment was therefore illegal.

"We do not think it is necessary to discuss this question at length. The practice of the commissioner in making new and different assessments is of so · long standing, and has met with such general acquiescence, that this in itself constitutes a strong reason rejecting the contention of plaintiff. Ever since the federal income tax laws have been enacted, this practice has been going on. * * * The cases cited by plaintiff with reference to the acts of some official of the government whose action is by law made final have no application here."

In Page v. Lafayette Worsted Co., 1 Cir., 66 F.2d 339, 341, certiorari denied 290 U.S. 692, 54 S.Ct. 127, 78 L.Ed. 596, the issue raised was "whether the Commissioner had authority, no fraud by the taxpayer being claimed, or mistake of fact being shown, to change an assessment once made and a refund paid, if done within the period of limitation for the assessment of taxes for the year in question." The Court held that such authority resided in the Commissioner and in arriving at that conclusion cited, among others, the case of McIlhenny v. Commissioner arising

in this Circuit, 39 F.2d 356, 357, wherein Judge Morris said " * * * the sole question presented by the record before us is not whether the first action of the Commissioner in allowing the deduction was right or wrong, but whether having once determined the matter, and the tax computed upon such determination having been paid, the Commissioner had power or authority, in the absence of fraud or other new evidence, to reopen the case, disallow the deduction theretofore allowed by him, and make a redetermination of the tax. * * * In the case at bar, the statutory procedure was not followed, in that there was no agreement in writing, or otherwise, that the determination and assessment of February, 1924, should be final and conclusive. As a consequence, we are constrained to hold that the determination and assessment of 1924 were not final and conclusive, and that the Commissioner was not estopped or otherwise barred, by the payment and acceptance of the tax based on such determination and assessment, from reopening the case and making the further determination subsequently made by him." In Burnet v. Porter, 283 U.S. 230, 51 S.Ct. 416, 75 L.Ed. 996, Mr. Justice Sutherland said: "The Court of Appeals sustained the power of the Commissioner upon the authority of McIlhenny v. Commissioner of Internal Revenue [3 Cir.], 39 F.2d 356; and was clearly right in doing so."

The plaintiff has furnished a very carefully prepared brief tending to destroy the logic of the foregoing opinions by making distinctions between those cases and the case at bar. One of the points is, that the McIlhenny case deals with ordinary determinations of tax liability on a change of ruling as to the law involved, while the instant case deals with the exercise of discretionary power. I am unable to follow this distinction for present purposes, since the discretionary power referred to finds its origin in the law just as does any other power under the Act, and it follows that if the Commissioner may reconsider and reverse himself on a question of law, he may also reverse himself on a question of fact involved in his exercise of lawful discretionary power.

The plaintiff further argues, and I think with much force, that the cases above relied upon by the defendant are in direct conflict with the following cases: Kaufman v. United States, 1875, 11 Ct.Cl. 659,

670, affirmed 96 U.S. 567, 24 L.Ed. 792; United States ex rel. McBride v. Schurz, 1880, 102 U.S. 378, 26 L.Ed. 167; Noble v. Union River Logging R. Co., 1893, 147 U.S. 165, 176, 177, 13 S.Ct. 271, 37 L.Ed. 123; Ballinger v. U. S. ex rel. Frost, 1910, 216 U.S. 240, 250, 30 S.Ct. 338, 54 L.Ed. 464; Lane v. Watts, 1914, 234 U.S. 525, 540, 34 S.Ct. 965, 58 L.Ed. 1440; Kern River Co. v. United States, 1921, 257 U.S. 147, 151, 152, 42 S.Ct. 60, 66 L.Ed. 175; Great Northern Railway Co. v. Steinke, 1923, 261 U.S. 119, 130, 43 S.Ct. 316, 67 L.Ed. 564; West v. Standard Oil Co., 1929, 278 U.S. 200, 218, 219, 49 S.Ct. 138, 73 L. Ed. 265; Butte, Anaconda & Pacific Ry. Co. v. United States, 1933, 290 U.S. 127, 142, 143, 54 S.Ct. 108, 78 L.Ed. 222.

Two of the foregoing cases were tax cases. In the Kaufman case the Commissioner of Internal Revenue being authorized to determine whether there had been an overpayment of stamp taxes, found that there was, and upon refusal of the Comptroller to honor his finding, the Court of Claims held: "Here the Commissioner of Internal Revenue has determined the questions which were within his jurisdiction, has awarded an allowance, has filed his certificate thereof with the Comptroller of the Treasury, and has exhausted his jurisdiction." This case is cited as authority for the proposition that the filing of the certificate by the Commissioner ended his authority and therefore when the Commissioner in the instant case made refunds, he exhausted his jurisdiction. The case is not in point since no question of the right of the Commissioner to reconsider after filing his certificate was involved. The other tax case is Ridgway v. United States, 1883, 18 Ct.Cl. 707, wherein it was held that the Commissioner was within his rights in revoking a refund before payment. The court holding "until payment is made his authority over the matter is not exhausted." Whatever the implications may be as to the language quoted, that case furnishes no authority to hold that payment does exhaust the Commissioner's authority.

The other cases cited under this heading deal with the power of Government officers to revoke their action. Thus, in the Schurz case where a patent had issued for lands it was held that the Commissioner's authority ceased. To the same effect is the Noble case citing Steel v. St. Louis Smelting & Refining Co., 106 U.S. 447, 1 S.Ct. 389, 27 L.Ed. 226 and also the Ballinger case and the Kern River Co. case and the Great Northern Railway case, and the West case.

In the Butte, Anaconda & Pacific Railway case, it appears that under Sec. 204 of the Transportation Act of 1920, 49 U.S.C. A. § 73, the Interstate Commerce Commission sat as a special tribunal to determine the extent and amount of a deficit incurred in the operation of a railroad by the federal government. The Commission was vested with functions broader than those customarily conferred upon auditing or disbursing officers and in thus functioning they found that the railroad was entitled to recover the sum of $487,116.31 and upon delivery of a release by the railroad, the money was paid to it and subsequently disbursed for its own purposes. About two years later, the Commission issued an order to reopen the proceeding and over the protest of the railroad appearing specially, the Commission entered an order canceling the certificate under which payment had been made and on refusal of the railroad to repay, suit was instituted for the recovery thereof, on the theory of mistake in the construction of the word "deficit." The court points out that such error was not mistake but error of judgment; that the Commission sits as a special tribunal to hear and determine claims. "It renders a judgment upon a full hearing. In deciding any one of the enumerated questions of construction, as in other rulings of law or findings of fact, the Commission may err. The victim of the error may be either the carrier or the government. Although the decision on the question of construction be favorable to the carrier, it may still fail to secure compensation, because there was, in fact, no deficit, whatever meaning be given to that word. On the other hand, an erroneous decision in favor of the carrier, on any of those questions, may result in the issue of a certificate and the payment thereunder of money which should not, and but for the error would not, be made. Since authority to pass upon the meaning of the word 'deficit,' and upon each of the other questions of construction, is essential to the performance of the duty imposed upon the Commission, and Congress did not provide a method of review, we hold that it intended to leave the government, as well as the carrier, remediless whether the error be one of fact or of law." [290 U.S. 127, 54 S.Ct. 112, 78 L.Ed. 222.]

If the same reasoning were to be followed in the instant case judgment would be entered for the plaintiff. The analogy seems as near perfect as could ever be expected. It thus appears that there is conflict in the reasoning which is applied in tax cases and the reasoning which is applied in a case under the Transportation Act, 41 Stat. 456.

In view of the opinion in the McIlhenny case supra, dealing, as it does, with a tax problem closely akin to the problem here, I feel it my duty to follow it.

Judgment will therefore be entered for the defendant.