[Civ. No. 3300. Fourth Dist. Apr. 19, 1945.]

THE PEOPLE, Appellant, v. J. O. DORR et al., Respondents.

Robert W. Kenny, Attorney General, and L. G. Campbell, Deputy Attorney General, for Appellant.

Harry H. Parsons for Respondents.

BARNARD, P. J.—This is an action to obtain possession of Section 36, Twp. 14 N., Range 15 East, S. B. B. & M., to eject the defendants and enjoin them from entering said lands or claiming ownership therein, and to recover for ores and minerals of the value of $6,000 alleged to have been removed therefrom.

The plaintiff claims title to this section under the act of Congress of March 3, 1853 (10 Stats. at L. 244), granting sections 16 and 36 in every township to the state for school purposes. The defendants claim to be the owners of four mining claims within this section, located before any survey of that section was made.

In January, 1920, J. M. Dorr located these four claims in his own name but for the benefit of his son J. O. Dorr. They have been in possession ever since and have performed the annual work required by the mining laws each and every year since that time. This section was first surveyed in May and June, 1924, the survey was approved on December 19, 1927, and accepted by the Department of the Interior on February 15, 1928. In 1939, Dorr leased these claims to certain other parties. After these lessees started to work the claims they discovered that they were on section 36, whereupon they obtained a lease from the state and brought suit to quiet title against Dorr. Judgment was entered quieting title in Dorr. The state then secured a patent for this section under the act of Congress of June 21, 1934 (43 U.S.C.A. § 871a). This patent was dated July 10, 1942, and recited that title had vested in the State of California under the act of March 3, 1853, upon the acceptance of the plat or survey on February 15, 1928, and stated that it was given as evidence of the title which had vested in the state on February 15, 1928.

This action was brought on July 14, 1942. The court found in all respects in favor of the defendants finding, among other

things, that in January, 1920, the land covered by these four claims was open, unsurveyed and vacant mineral land of the United States, subject to entry under the mineral laws; that Dorr was a qualified entryman; that the four claims are contiguous end to end; that the land covered by said claims was and is mineral in character and not agricultural at all; that it was known to be mineral in character; that this ground had long been mined prior to its location by Dorr; that said mining operations were known to the entire community for many years prior to that location; that two brothers located this identical property in 1917, mined it successfully and marketed tungsten ore therefrom during World War I; that they abandoned these claims and told Dorr to locate the same, which he did; that in January, 1920, he made a rediscovery of mineral-bearing rock, tungsten in place, on each of these claims, sank the old shafts deeper and ran new tunnels; that he marked the boundaries of each claim so that it could be readily traced, with rock monuments at each corner and in the middle of each claim; that a separate and distinct rediscovery was made on each claim and a location notice was posted in a conspicuous place thereon, and that each of said notices so posted contained the facts required by the mining laws; that copies of said location notices were not recorded; that the ledge or lode that traverses these four claims lengthwise is conspicuous and can be readily followed for at least two miles; that at places it rises above the surface of the ground for more than 20 feet; that ever since January, 1920, all four of these claims have been enclosed by fences and the only means of access during the entire period has been through locked gates; that the annual assessment work and improvements have been performed each year since 1920 regardless of moratoriums; that between January, 1920, and February 15, 1928, the date of the acceptance of the official survey, more than $3,000 was expended in good faith on these claims by J. O. Dorr; that assays and shipments of ore made in 1917 and later show that there was ore in paying quantities; that the state applied for and received a patent in 1942 without notice to the defendants; that there is no evidence of any notice, hearing, contest or action whatever other than a certificate from the register of the local land office at Los Angeles to the effect that no claim appeared of record in that office; that no contest or adverse proceeding as against the defen-

dants had ever been had until this action was filed; that J. O. Dorr assisted the surveyors in 1924 when they surveyed this section; that they all saw the mining that had been done and knew the mineral character of the land; and that each of said claims is mineral in character and was known as such and to be worth nothing for anything else on the date of the discovery or rediscovery on January 12, 1920. Judgment was entered in favor of the defendants and the plaintiff has appealed.

The appellant contends that the effect of the act of Congress of March 3, 1853, was a grant *in praesenti* and that the title passed to the state at that time unless the land was then known to be mineral in character; that the approval of the survey in 1928 was conclusive as to the nonmineral character of the land; and that the patent issued to the state in 1942 is final and conclusive since the respondents did not file an adverse within the time allowed therefor.

 The act of Congress of March 3, 1853, excepted mineral lands from the grant therein contained with a further exception where private claims had intervened before a survey was made, and provided that other land could then be selected in lieu thereof by the state. It is clear, under the authorities, that title to this particular section could not have vested in the state until the land was identified by the acceptance of the survey in 1928 (*St. Paul & P. Ry. Co.* v. *Northern P. Ry. Co.,* 139 U.S. 1 [11 S.Ct. 389, 35 L.Ed. 77]; *Sherman* v. *Buick,* 3 Otto (U.S.) 209 [23 L.Ed. 849]), and the patent which was issued recognizes this fact and purports to confirm title as of that date. At that time, the defendants had valid mining claims on portions of this section and were in possession and performing the required work. A patent cannot cut off previously existing vested rights in a patented property (*Ames* v. *Empire Star Mines Co., Ltd.,* 17 Cal. 2d 213 [110 P.2d 13]). In that case it was held that the certificate of the register of the United States Land Office that no claim or filing appeared in the record of his office, which is the sort of certificate relied on by the appellant here, could be effective only against subsequently located mining claims and was not effective as against existing vested rights.

 It is well settled that the decision of the land department is not conclusive in such a case as this and that the question as to the character of the land is subject to review in the

courts. (*West* v. *Standard Oil Co.*, 278 U.S. 200 [49 S.Ct. 138, 73 L.Ed. 265].)

■ Moreover, the evidence sustains the court's findings to the effect that the land covered by these four claims was known to be mineral in character prior to the acceptance of the survey in 1928 when, if at all, title to this particular land would vest in the state. It clearly appears from the evidence that this was rough mountainous land which could have no value at all as agricultural land. (See *Hunt* v. *Steese*, 75 Cal. 620 [17 P. 920].) The notes of the survey made in 1924 describe it as rough, mountainous and rocky. At that time mining was being carried on on each side of these claims, on the same ledge, and mineral claims were then being worked by the defendants on these four claims. These particular claims had been proved to be valuable for mineral purposes by the ore which had been previously taken out. A great deal had then already been expended on these claims and in making roads to enable the operations to be more successfully carried on. In addition to the legal rights acquired by the defendants long before the survey, and then being maintained by them, the mineral character of the land was known throughout the community and even to the men employed in making this survey. Under the facts as found, and as supported by the evidence, the plaintiff acquired no title to the land covered by these four claims.

■ The appellant argues that the failure of the defendants to record copies of their location notices destroyed their rights to these claims. Not only was there no such penalty affixed to the statute at that time (see *Webb* v. *Carlon*, 148 Cal. 555 [83 P. 998, 113 Am.St.Rep. 305]; *Last Chance Min. Co.* v. *Bunker Hill etc. Co.*, 131 F. 579 [66 C.C.A. 299]; 200 U.S. 617 [26 S.Ct. 754, 50 L.Ed. 622]), but no question of notice to other claimants is here involved and the failure to record could not be material here where it appears that the appellant acquired no title to the land in controversy, either under the act of Congress upon which it must rely or under the patent which was belatedly issued.

■ It is further argued that any possible rights of the respondents have been lost because they failed to file an "adverse" and set forth their claims in opposition to the issuance of a patent at the time one was applied for by the state. Not

only is there no evidence that notice of the application for a patent was ever published, but the procedure in such cases seems designed to cover situations where the rights of various locators are involved rather than a controversy between the state as a grantee of land for school purposes and individuals who have filed mining claims and who are in possession. In any event, the failure to appear and contest the application for a patent is immaterial where it affirmatively appears that the state was not entitled to the patent under the terms of the grant and the existing and known facts.

█ The appellant also contends that while the original location was filed by the father, J. M. Dorr, and a subsequent location by the son, J. O. Dorr, no conveyance from the father to the son appears in the record. There is testimony that the father had given a quitclaim deed to the son and the trial judge remarked that this deed could be brought in and introduced in evidence. Apparently, this was not done although the deed itself appears with the exhibits. No prejudice to the plaintiff appears.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 14, 1945. Carter, J., voted for a hearing.