# Settlement Authority of the United States in Oil Shale Cases

The Attorney General has authority to settle cases even when the agency charged with administering the underlying law would not have that authority.

In settling a case, the Attorney General is not bound by whatever litigating position the Department of Justice has heretofore taken in the case, nor is he bound by each and every statutory requirement that Congress may have imposed upon some other agency head in administering that agency's program; at the same time, there may be some forms of settlement that would be foreclosed, as where the settlement would result in action plainly at variance with Congress' intent.

September 4, 1980

## MEMORANDUM OPINION FOR
## THE DEPUTY ASSISTANT ATTORNEY GENERAL,
## LAND AND NATURAL RESOURCES DIVISION

This is in response to your memorandum inquiring whether "the United States has authority to settle the outstanding oil shale litigation." For the reasons set forth below, our reply is that the Attorney General, representing the United States, has such authority, but that his exercise of it must be done with close attention to the specific statutes governing the activities that form the subject matter of the litigation.

As the ranking legal official of the federal government, the Attorney General has plenary power and supervision over any litigation to which the United States is a party, absent an applicable congressional directive to the contrary. *United States* v. *California,* 332 U.S. 19, 27 (1947); *FTC* v. *Guignon,* 390 F.2d 323, 324 (8th Cir. 1968), relying on 28 U.S.C. §§ 516 and 519, which respectively reserve the conduct of federal litigation to the Justice Department under the direction of the Attorney General, and the supervision of all such litigation to the Attorney General.

Included within the broad authority of the Attorney General to carry on litigation is the power to compromise.[1] *Halbach* v. *Markham,* 106 F. Supp. 475 (D. N.J. 1952), *aff'd,* 207 F.2d 503 (3d Cir. 1953), *cert. denied,* 347 U.S. 933 (1954). "This power is in part inherent, appertaining to the Office, and in part derived from various statutes and decisions . . . ." 38 Op. Att'y Gen. 98, 99 (1934). This formal Attorney

---

[1] The words "compromise" and "settlement" will be used interchangeably in this memorandum.

General opinion cites numerous supporting opinions of the Attorney General and judicial precedents going back more than a century. *See also United States* v. *Newport News Shipbuilding and Dry Dock Co.,* 571 F.2d 1283, 1287 (4th Cir. 1978), *cert. denied,* 439 U.S. 875 (1978); *Castell* v. *United States,* 98 F.2d 891 (2d Cir. 1938), *cert. denied,* 305 U.S. 652 (1938); 38 Op. Att'y Gen. 124 (1934); and for bedrock authorities *see* the *Confiscation Cases,* 74 U.S. 454, 458 (1868), and *United States* v. *San Jacinto Tin Co.,* 125 U.S. 273, 284 (1888).

The 1934 Attorney General's opinion contains an expansive description of the Department's authority to compromise cases. The opinion concludes that the Attorney General possesses authority to settle cases even when the agency charged with administering the underlying law would not have that authority. Indeed, the opinion was written as an elaboration upon an earlier formal opinion in which the Attorney General had held that the Secretary of the Treasury did not possess discretion to compromise income tax cases in the absence of bona fide disputed questions of facts. 38 Op. Att'y Gen. 94 (1933). The subsequent opinion was written to emphasize that when such cases are brought to the Department of Justice for litigation, the Attorney General could exercise that very power which was not available to the Secretary of the Treasury. The scope of the settlement prerogative in the Attorney General is broadly described:

> I have no hesitation in declaring that it is a power whether attaching to the office or conferred by statute or executive order, to be exercised with wise discretion and resorted to only to promote the Government's best interest or to prevent flagrant injustice, but that it is broad and plenary may be asserted with equal assurance, and it attaches, of course, immediately upon the receipt of a case in the Department of Justice. . . .

38 Op. Att'y Gen. at 102.

Subsequent to our receipt of your request, and after we had prepared an initial response, you advised me that it now appears unlikely that a settlement along the lines of your memorandum will prove possible. Given that change of circumstances, it is probably unnecessary to explore the limits on the Department's settlement prerogative. Instead, we offer the following general guideposts. First, as stated above, the Attorney General's power is quite broad and is of long-standing vintage. It is at least sufficiently broad to allow this Department to formulate a settlement proposal that differs from whatever litigating posture we have heretofore taken. Second, where genuine questions of fact remain (as, for instance, whether adequate assessment work was performed) the Attorney General can exercise his settlement authority with respect to those questions. On the other hand, it should go without saying that the Attorney General is bound by the duty imposed on

757

the President under Article II of the Constitution to "take care that the laws be faithfully executed," and that consequently there may be some forms of settlement that would be foreclosed, as where the settlement would result in action plainly at variance with Congress' intent.

This latter point suggests a subtle issue. On the one hand, it is reasonably clear that the Attorney General—in the exercise of his settlement responsibilities—is not bound by each and every statutory limitation and procedural requirement that Congress may have specifically imposed upon some other agency head in the administration of that agency's programs. For this reason, the two cases cited in your memorandum—*West* v. *Standard Oil Co.,* 278 U.S. 200 (1929),[2] and *Cameron* v. *United States,* 252 U.S. 450 (1920)— are not controlling. Those cases deal with congressional requirements imposed on officials other than the Attorney General, and should not be thought to be directly applicable to him for the performance of his litigation function. On the other hand, Congress' will is surely not irrelevant to the Attorney General's discretion. With your approval, we agree that it is sensible to defer a more detailed consideration of the scope of, and limitations upon, the Attorney General's power until a precise proposal is developed.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[2] Because the question you have asked relates directly to the authority of the government to relinquish title to land held by the United States, cases like the Standard Oil case do highlight the tension we perceive in this area of the law. The Supreme Court, after citing well-settled authority for the proposition that the Secretary of the Interior has broad authority "to do justice to all claimants and preserve the rights of the people of the United States" with respect to property, was nonetheless quick to conclude that this:

> broad power of control and supervision conferred upon the Secretary "does not clothe him with any discretion to enlarge or curtail the rights of the grantee, nor to substitute his judgment for the will of Congress as manifested in the granting act."

278 U.S. at 220. If the Secretary's authority is so limited, it is reasonable to question whether the Attorney General's general litigation supervisory powers would give him a greater discretion. As noted above, if there is a greater ambit of discretion, it must be located in Congress' actions in creating a centralized litigating department and clothing it with overriding authority to settle particular cases.