STATE OF UTAH v. WORK, Secretary of the Interior, et al.

(Court of Appeals of the District of Columbia. Submitted March 5, 1925. Decided April 6, 1925.)

No. 4174.

1. **Mines and minerals ⟨⟩6—State held without title to lands included in school grants sufficient to enjoin Secretary of the Interior's grant of oil-prospecting permits.**

Under Act July 16, 1894, state could acquire no title to school lands thereby granted until survey of such lands had been approved, and not then if the lands at that time were known to be mineral, and where lands were within temporary petroleum withdrawal made by Secretary of the Interior and approved by the President two years before survey, state acquired no interest which would support suit to enjoin Secretary of the Interior from granting oil-prospecting permits.

2. **United States ⟨⟩135 — United States held necessary party defendant to suit to enjoin Secretary of the Interior from issuing oil-prospecting permits.**

The United States is a necessary party defendant to suit by a state to enjoin Secretary of the Interior from issuing oil-prospecting permits on lands included within school land grants, but included before survey in a petroleum reserve.

Appeal from the Supreme Court of the District of Columbia.

Suit by the State of Utah against Hubert Work, Secretary of the Interior, and William Spry, Commissioner of the General Land Office. From a decree of dismissal, plaintiff appeals. Affirmed.

P. H. Loughran, of Washington, D. C., and W H. Farr, of Salt Lake City, Utah, for the State of Utah.

C. E. Wright, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This action was brought in the Supreme Court of the District of Columbia by appellant, the state of Utah, through its Attorney General, to restrain the Secretary of the Interior from enforcing his decisions relating to certain lands situated within that state, and from issuing permits to prospect for oil or gas on the lands. From a decree dismissing the bill of plaintiff, on the motion of appellees and the election of plaintiff to stand upon its bill of complaint, this appeal was taken.

It appears that by the Act of Congress of July 16, 1894, 28 Stat. 107, the state of Utah was granted, for school purposes, sections 2, 16, 32, and 36 in every township. The act contained the usual provision found in most of the acts making school land grants to the Western states, as follows: "That upon the admission of said state into the Union, sections numbered two, sixteen, thirty-two, and thirty-six in every township of said proposed state, and where such sections or any parts thereof have been sold or otherwise disposed of by or under the authority of any act of Congress other lands equivalent thereto, in legal subdivisions of not less than one quarter section and as contiguous as may be to the section in lieu of which the same is taken, are hereby granted to said state for the support of common schools, such indemnity lands to be selected within said state in such manner as the Legislature may provide, with the approval of the Secretary of the Interior."

The act contained a further provision "that the second, sixteenth, thirty-second, and thirty-sixth sections embraced in permanent reservations for national purposes shall not, at any time, be subject to the grants nor to the indemnity provisions of this act, nor shall any lands embraced in Indian, military, or other reservations of any character be subject to the grants or to the indemnity provisions of this act until the reservation shall have been extinguished and such lands be restored to and become a part of the public domain."

In compliance with a report of a geologist of the United States Geological Survey, the Secretary of the Interior embraced the lands here in question (some 25 sections located in the San Juan region in the state of Utah) within a temporary petroleum withdrawal. The President of the United States, on July 2, 1910, acting under the Act of June 25, 1910, 36 Stat. 847 (Comp. St. §§ 4523–4525), placed these lands in "petroleum reserve No. 7," and on August 25th following the President ratified and confirmed the action of withdrawal by the Secretary of October 4, 1909. The lands were unsurveyed at the time of Utah's admission to statehood, January 4, 1896, and were likewise unsurveyed at the time the foregoing action was taken by the President and the Secretary of the Interior. The survey of the lands was approved by the Commissioner of the General Land Office in March and May, 1912, and filed July 2, 1912, two years after the lands in question had been included in petroleum reserve No. 7 by the President.

The motion to dismiss the bill was based upon the following grounds: (1) Lack of

equity; (2) lack of jurisdiction to interfere with a matter wholly within the jurisdiction of the Land Department; (3) failure of the state to show title in the land to an extent that would entitle it to relief in equity; (4) defect of parties; and (5) that the suit is against the United States.

[1] It is unquestionably the law that, if the lands were known to be mineral at the time of the approval of the survey, the state of Utah could not take title thereto. United States v. Sweet, 245 U. S. 563, 38 S. Ct. 193, 62 L. Ed. 473. Nor would title attach in the state, though terms of present grant are used in the school land grant, as against any disposition thereof made by the United States, until the survey of the lands had been approved. Heydenfeldt v. Daney Gold & Silver Mining Co., 93 U. S. 634, 23 L. Ed. 995; United States v. Morrison, 240 U. S. 192, 36 S. Ct. 326, 60 L. Ed. 599. It is clear, therefore, that Utah had no such title to these lands at the time the temporary petroleum withdrawal was made by the Secretary, or at the time it was approved by the President, and the lands were placed by him within petroleum reserve No. 7, as will enable it to question, in this proceeding, the validity of the action taken by the government.

[2] At a time prior to survey, when the lands were still public lands of the United States, they were, under a valid order of the President, designated as oil lands and placed within a petroleum reserve. This removed them from the operation of the school land grant until such time as the order of withdrawal should be revoked. That time has not arrived. In the present suit, since the United States is not a party, no decree can be entered which will affect its title to the lands, or operate to quiet title in the state. Neither is it necessary for us to consider in this proceeding whether or not, at the time of withdrawal, or the completion of the survey, these were oil lands. That is a question of fact, to be determined between the state of Utah and the United States.

It follows that the interest of the United States in these lands, at present public lands, to which the Government still has title, would not be subject to any decree that might be entered in this case. It is therefore unnecessary to consider the other matters advanced by counsel for plaintiff, since this defect of parties is fatal to plaintiff's case.

The decree is affirmed, with costs.

Petition for allowance of appeal to the Supreme Court of the United States granted April 11, 1925.