223 F.2d 129
 STATE of UTAH, John Archer, W. H. H. Cranmer, and J. R. Simplot Company, a corporation, Appellants,
v.
BRADLEY ESTATES, Inc., a corporation, and Walter N. Stillman, Charles A. Rhealt, and Robert I. Hunneman, Trustees under the will of Robert S. Bradley, deceased, Appellees.
STATE of Utah, John Archer, and W. H. H. Cranmer, Appellants,
v.
BRADLEY ESTATES, Inc., a corporation, and Walter N. Stillman, Charles A. Rhealt, and Robert I. Hunneman, Trustees under the will of Robert S. Bradley, deceased, Appellees.
 No. 5018.
 No. 5019.
 United States Court of Appeals Tenth Circuit.
 May 23, 1955.
 
 H. R. Waldo, Jr., Asst. Atty. Gen. of Utah, and Peter W. Billings, Salt Lake City, Utah (E. R. Callister, Jr., Atty. Gen., of Utah, and Robert L. Cranmer, Salt Lake City, Utah, were with them on the brief), for appellants.
 S. N. Cornwall, Salt Lake City, Utah (Grant H. Bagley and Dennis McCarthy, Salt Lake City, Utah, were with him on the brief), for appellees.
 Before BRATTON, HUXMAN and MURRAH, Circuit Judges.
 BRATTON, Circuit Judge.
 
 
 1
 These were actions instituted by Bradley Estates, Inc., and Walter N. Stillman, Charles A. Rhealt, and Robert I. Hunneman, trustees under the will of Robert S. Bradley, deceased, against the State of Utah, John Archer, W. H. H. Cranmer, and J. R. Simplot Company, to quiet title to certain lode mining claims valuable for phosphate, located in Rich County, Utah. Some of the claims were in section 32 and some in section 36, in designated townships and ranges, respectively. Plaintiffs asserted title under four mineral patents issued by the United States to Peter B. Bradley and Robert S. Bradley pursuant to the provisions of the Act of May 10, 1872, 17 Stat. 91, now 30 U.S.C.A. § 22 et seq. One of the patents was issued in 1908, and three were issued in 1915. By counterclaim, the defendants sought to quiet their title. They claimed under the grant contained in the Enabling Act of the State of Utah, approved July 16, 1894, 28 Stat. 107. Judgment was entered in each case quieting the title of plaintiffs. Aggrieved, the defendants appealed.
 
 
 2
 Section 6 of the Enabling Act of Utah, supra, grants to that state sections 2, 16, 32, and 36 in every township in the state for the support of common schools. By its further terms, the section grants and makes provision for the selection of other lands equivalent thereto where such sections or parts thereof have been sold or otherwise disposed of by or under the authority of an Act of Congress. And section 10 provides that the proceeds of lands therein granted for educational purposes shall constitute a permanent school fund, and that such lands shall not be subject to preemption, homestead entry, or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be surveyed for school purposes only. Section 6 does not contain any express exception or reservation of mineral lands from the grant. But in the appropriate exertion of the judicial function of ascertaining and giving effect to the Congressional intent in respect to including in or excluding from the grant mineral bearing lands, the Act must be viewed in the light of its content, in the light of the mining laws, in the light of the school land indemnity law, and in the light of the established public policy relating to mineral lands. And it is settled law that when read in that manner, the Act does not disclose a legislative purpose to include therein lands known to be mineral at the time the grant takes effect. United States v. Sweet, 245 U.S. 563, 38 S.Ct. 193, 62 L.Ed. 473.
 
 
 3
 It is urged on behalf of the appellants that under sections 6 and 10 of the Enabling Act, supra, the four specified sections in each township granted for the support of common schools were not open to mining or other location under the public land laws of the United States, unless such sections were known to be valuable for mineral purposes in 1896, when the State of Utah was admitted into the Union; that the lands in question were not known at that time to be valuable for such purposes; that when the official survey of such lands was completed and filed, the full and unencumbered title passed to the state; and that title having become vested in the state, the mineral patents were void. It is said in substance that upon its admission, the State was by the Enabling Act granted an interest in the specified sections in each township, even though unsurveyed, superior to the rights of individuals locating lode mining claims thereon prior to the approval of the official survey. And it is further said that to hold the state has no rights against individuals until a survey has been made, and that a mineral location made between the date of statehood and the date on which the survey is approved supersedes the rights of the state, is to ignore the plain language of section 10 of the Enabling Act. The granting language contained in section 6 is couched in words of present grant. And section 10 concerns itself with the lands granted, whether surveyed or unsurveyed, and provides that they shall not be subject to preemption, homestead entry, or any other entry under the laws of the United States. But in considering similar grants for the support of common schools, it has been held without deviation that title to unsurveyed sections of public lands designated as school lands does not pass to the state upon its admission into the Union; that they remain subject to the disposition of Congress until the official survey thereof is approved by the Land Department; and that lands known to be valuable for minerals at the time of the approval of the survey do not pass to the state. Heydenfeldt v. Daney Gold & Silver Mining Co., 93 U.S. 634, 23 L.Ed. 995; Ivanhoe Mining Co. v. Keystone Consolidated Mining Co., 102 U.S. 167, 26 L.Ed. 126; United States v. Morrison, 240 U.S. 192, 36 S.Ct. 326, 60 L.Ed. 599; West v. Standard Oil Co., 278 U.S. 200, 49 S.Ct. 138, 73 L.Ed. 265; United States v. Sweet, supra; United States v. Wyoming, 331 U.S. 440, 67 S.Ct. 1319, 91 L.Ed. 1590; State of Utah v. Work, 55 App.D.C. 372, 6 F.2d 675, affirmed, 273 U.S. 649, 47 S.Ct. 246, 71 L.Ed. 822. We fail to find in section 10, supra, any persuasive token of a Congressional purpose to take the four specified sections in each township in Utah out of that firmly imbedded principle, as that section of the Enabling Act has application only to non-mineral lands granted to the state for educational purposes. It does not have application to mineral lands.
 
 
 4
 At the time of the admission of the State of Utah into the Union, no official survey of the lands in controversy had been approved. The official township survey was approved at a later date. After the approval of the survey, applications were made to the Register and Receiver of the Land Office in Salt Lake City for the issuance of mineral patents covering the lode mining claims to which reference has been made. Inasmuch as the applications covered in part lands in sections 32 and 36, notice of their filing was given to the State of Utah. The State appeared and filed written protests against the granting of the requested mineral patents on the ground that the lands situated in such sections were granted to the State for the support of its common schools, and that at the time they were so granted they were not known to be valuable for minerals. Hearings were had and appeals were taken. The State participated throughout. By final action taken within the Department of the Interior, it was found and determined that at and prior to the date of the approval of the final official survey the lands were known to be valuable for the minerals they contained. And, taking that determination into consideration, the mineral patents were issued. The Land Department — meaning the Register and Receiver of the local Land Office in Salt Lake City, the Commissioner of the General Land Office, and the Secretary of the Interior — was clothed with power and authority to determine whether the lands in question were known to be mineral in character at and prior to the date of the approval of the official township survey. That question was determined against the State. And in the absence of fraud or imposition, such departmental determination is conclusive here. Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659; West v. Standard Oil Co., supra.
 
 
 5
 The official survey of the lands in controversy not having been approved at the time Utah became a state, and such lands being known at and prior to the date on which the survey was approved to be valuable for the minerals they contained, title did not pass under the grant contained in the Enabling Act. It passed under the mineral patents. Heydenfeldt v. Daney Gold & Silver Mining Co., supra; Ivanhoe Mining Co. v. Keystone Consolidated Mining Co., supra; United States v. Morrison, supra; United States v. Sweet, supra; United States v. Wyoming, supra. Accordingly, the judgments are severally Affirmed.